**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

COURTALERT.COM, INC.,

      Plaintiff,

v.

AMERICAN LEGALNET, INC., EREZ
BUSTAN, and ROBERT LOEB,

      Defendants.

No. 1:20-cv-07739

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM OR,
ALTERNATIVELY, FOR SUMMARY JUDGMENT**

---

**GREENBERG TRAURIG LLP**
500 Campus Drive, Suite 400
Florham Park, NJ 07932

      Of Counsel and On the Brief:
      Robert H. Bernstein
      (*pro hac vice* forthcoming)
      Mark D. Lurie

      On the Brief:
      Ryan P. O'Connor

Defendants American LegalNet, Inc. ("ALN"), Robert Loeb, and Erez Bustan (collectively "Defendants"), through their undersigned attorneys, hereby make this motion to dismiss the Complaint for failure to state a claim or, alternatively, for summary judgment.

## PRELIMINARY STATEMENT

In a transparent effort to chill lawful competition and embarrass its competitor, Plaintiff CourtAlert.com, Inc. ("CourtAlert" or "Plaintiff") has filed this baseless action against a former employee, Robert Loeb, Loeb's current employer, ALN, and ALN's President, Erez Bustan. Plaintiff alleges that Loeb, at Bustan's urging, accessed and misappropriated Plaintiff's purported "confidential information" prior to leaving Plaintiff's employ. Plaintiff further contends Loeb impermissibly solicited customers during his subsequent employment with ALN.

Although Plaintiff alleges that Loeb took confidential information and solicited its customers, it elected to do nothing to protect its alleged "rights" for four months before finally commencing this lawsuit.[1]  When Plaintiff finally got around to filing this action, it did not seek an injunction to require Defendants to return any alleged confidential information.  Nor did Plaintiff seek to restrain Defendants from soliciting any customers.  Moreover, when Plaintiff did not serve the Complaint on any Defendant for almost a month after filing it, on October 16, 2020, Defendants offered to voluntarily waive service.  Plaintiff did not respond to this offer, or otherwise communicate with Defendants, until November 16, an entire month later.

Plaintiff's cavalier attitude is understandable: Plaintiff has no legally protectable interest at stake here.  Although Plaintiff alleges that Loeb accessed and misappropriated customer lists and pricing information, it is well established that this information does not constitute a trade

---

[1] In furtherance of its unlawful attempts to stifle competition, Plaintiff unlawfully hacked into Loeb's personal e-mail accounts in May 2020 and was well aware at that time that Loeb accepted employment with ALN. Loeb intends to file appropriate counterclaims.

*ACTIVE 53246832v8*

secret under either New York state law or the federal Defend Trade Secrets Act.  In that regard, both CourtAlert and ALN market their products to law firms.  Plaintiff cannot seriously claim that the names of law firms are "trade secrets."  Moreover, CourtAlert publicly posts its products and rates on its website.  Put simply, this publicly available information is not a "trade secret." *See, e.g., Schroeder v. Pinterest Inc.*, 133 A.D.3d 12, 29 (1st Dep't 2015) ("information that is readily available from public sources is not entitled to trade secret protection.").

Plaintiff also alleges that Loeb breached the confidentiality and non-solicitation provisions in his employment agreement.  As a threshold matter, Plaintiff cannot state a claim for breach of the confidentiality provision because, as noted above, the information at issue is not confidential.   Moreover, the non-solicitation provision is unenforceable for several other independent reasons.  First, the provision is overly broad and unduly burdensome, because it (1) lacks any geographic scope; (2) extends for 24 months, more than twice the length of Loeb's tenure with Plaintiff; and (3) purports to prohibit Loeb from soliciting any customer with whom Plaintiff has ever done business, whether or not Loeb himself ever spoke to or serviced them and whether or not the customer is also an ALN customer.

The agreement is likewise unenforceable because Loeb did not provide the "unique or extraordinary" services to Plaintiff required to enforce restrictive covenants under New York law.  Indeed, Loeb did not even receive any formal specialized training regarding Plaintiff's business or the industry prior to commencing his employment with Plaintiff.  Finally, non-solicitation provisions are unenforceable where, as here, the information sought to be protected is "readily available from publicly-available sources." *JAD Corp. of Am. v. Lewis*, 305 A.D.2d 545, 546 (2d Dep't 2003).  Accordingly, Plaintiff's breach of contract and related tortious interference with contract claims fail as a matter of law.

Plaintiff's remaining claims (for breach of fiduciary duty, unfair competition, and unjust enrichment) are duplicative of his trade secret misappropriation and contract claims as they are based on the same alleged conduct.  They are equally subject to dismissal as a matter of law.

Finally, even if Plaintiff could otherwise advance these causes of action – and it cannot – it has suffered no damages.  The Complaint fails to allege that Plaintiff lost any business due to Loeb's conduct. Plaintiff's failure to allege this essential element of its *prima facie* case is understandable: ***to date, it has not lost any business***.

In short, Plaintiff's claims fail at every level.[2]  The Court should reject Plaintiff's poorly veiled attempt to abuse the judicial system in its attempt to litigate its way to a competitive advantage and dismiss the Complaint with prejudice.  Allowing Plaintiff to proceed with their baseless legal claims designed purely to discredit ALN and falsely paint ALN in a negative light would have a disproportionate impact on ALN in the marketplace, because there are so few competitors in the niche marketplace.  It would be egregious to let Plaintiff exploit the judicial system in an obvious attempt to make up for its failed business strategy.

## FACTUAL BACKGROUND

ALN has been in business since 1996 and offers an integrated suite of powerful litigation workflow tools designed to help law firms dramatically improve the efficiency of their litigation attorneys: docketing, court and agency forms, case alerts, efiling solutions and practice support teams.  (Affidavit of Robert Loeb ("Loeb Aff.") at ¶ 4).  ALN's software platform, which centralizes and automates manual litigation tasks, is further enhanced with various value-added content and services, including constantly updated rules-based deadlines managed by the largest

---

[2] Plaintiff's empty claims that ALN copied its products are similarly unfounded.  ALN's products are eminently superior to Plaintiff's products because Plaintiff offers integrated solutions instead of disjointed products.  Tellingly, Plaintiff does not assert any causes of action based on this purported infringement, exposing these allegations as falsehoods designed solely to disparage ALN in the marketplace.

team of court-rules attorneys in the space, the largest database of regularly revised court and agency forms, and a team of professional services experts providing training and best practices. (*Id.* at ¶ 5).   Plaintiff and ALN sometimes compete for the same customers because certain products both companies provide are similar, but ALN's products are significantly different than – and superior to – Plaintiff's products because ALN offers integrated solutions, rather than separate services.  (*Id.* at ¶ 6).

Plaintiff "hired Loeb in July 2019 to serve as [Plaintiff's] main salesperson."  (Compl. ¶ 29; Loeb Aff. at ¶ 7).   In connection with Loeb's employment by Plaintiff, both parties executed an employment agreement (the "Agreement") which included confidentiality and non-solicitation clauses, but no non-compete provision.   (Compl. ¶ 30; Loeb Aff. at ¶ 8).   The Agreement, in overreaching wording, vaguely defines "Confidential Information" as "unpublished and otherwise confidential information … of a technical and non-technical nature relating to the business of the Company."  (Complaint, Ex. A, at p.2).   The Agreement concedes that no confidentiality obligations extend to information "generally available from public sources through no fault of [Loeb]."  (*Id.*).

The Agreement's non-solicitation provision provides, in relevant part,

> During the Employee's employment with the Company and for a period of twenty-four (24) months following the termination thereof, the Employee shall not, directly or indirectly, on his or her own behalf or on behalf of any person, firm or corporation, or in any capacity whatsoever, solicit or accept business from any Customers or prospective Customers of the Company or encourage any Customer or prospective Customer not to do business with the Company.

(Compl., Ex. A at p.4).

On May 15, 2020, Loeb resigned his employment with Plaintiff and returned the laptop issued to him by CourtAlert. (Compl. ¶ 31; Loeb Aff. at ¶ 10).   On May 17, 2020, Plaintiff

hacked into Loeb's personal e-mail accounts, apparently using log-in credentials embedded on the CourtAlert laptop used by Loeb during his employment.  (Loeb Aff. at ¶ 11).  On May 26, 2020, Loeb began his employment with ALN.  (*Id.* at ¶ 12).

On June 9, 2020, Plaintiff's counsel sent a letter to ALN asserting that Loeb breached the Agreement's confidentiality and non-solicitation provisions, as evidenced by an e-mail it claimed to have retrieved from Loeb's computer.  (Compl. ¶ 46; Loeb Aff. at ¶¶ 13-14).  On June 12, 2020, ALN's counsel replied, advising Plaintiff that Loeb had not breached the Agreement's provisions or otherwise engaged in any unlawful conduct and cautioning that Plaintiff had doctored the e-mail upon which it relied.  (Compl. ¶ 46; Loeb Aff. at ¶¶ 15-16).  The letter further explained that the Agreement's non-solicitation provision is unenforceable and demanded $80,000 in unpaid wages owed to Loeb by Plaintiff.[3]  (*Id.* at ¶¶ 16-17).  Plaintiff never responded.  (*Id.* at ¶ 18.)

Plaintiff filed this complaint on September 18, 2020, more than four months after Loeb resigned, and more than three months after the last communication between the parties' counsel. The Complaint asserts seven causes of action: (1) trade secret misappropriation under the Defend Trade Secrets Act; (2) unfair competition and misappropriation under New York law; (3) breach of contract; (4) tortious interference with contract; (5) breach of fiduciary duty; (6) unfair competition; and (7) unjust enrichment.  (Compl. ¶¶ 53-104). The Complaint alleges that Loeb accessed and misappropriated "confidential" information from Plaintiff, specifically:

> a.  Confidential Salesforce records identifying all New York contacts, customers, and potential customers.

> b.  Confidential Salesforce records used to identify Managing Clerk, Docketing Clerk, or Calendar Clerk contacts at existing and potential customers.

---

[3] Loeb intends to assert a counterclaim against Plaintiff for these unpaid wages in the event that the Court does not grant his motion to dismiss.

c. Confidential Salesforce records identifying customers, potential customers, and existing revenues for various CourtAlert products, including CourtAlert for PACER and Case Management.

d. Confidential analysis comparing CourtAlert's Case Management product with ALN offerings and those of another competitor.

e. Confidential list of potential leads that CourtAlert generated after extracting costly PACER data to identify law firms using a competing service.

f. Confidential list of recent CourtAlert trial users and an attendance list of the customer and potential customers who attended a March 30 webinar hosted by CourtAlert.

g. Confidential list of all customers and potential customers that work in law firm library departments—data compiled over decades of working with law firm libraries, the primary target for many CourtAlert services, including among others CourtAlert for PACER, a product targeted to firm library departments and librarians that accounts for a significant percentage of CourtAlert's revenue.

h. Confidential list of the items currently being monitored for a particular customer—important, confidential information that includes not only the cases the firm is currently handling, but also the matters the firm is monitoring as part of its prospective pipeline of cases. … .

i. Confidential list of CourtAlert offerings—including highly confidential services or software enhancements that CourtAlert programs and tests with customers. … .

(Compl. ¶ 39).

As Plaintiff admits, its customers – and ALN's customers – are "large law firms and law departments." (Compl. ¶ 4; Loeb Aff. at ¶ 19). Their identities are either commonly known or easily discoverable through a simple internet search. (Loeb Aff. at ¶ 19). Knowledge of a particular "contact" at a potential customer does not provide any special advantage, as these individuals are easily identified through law firm websites, LinkedIn, the New York Managing Attorneys' and Clerks' Association, telephone calls to firms, and other commonplace means. *Id.*

Nor are Plaintiff's offerings proprietary or confidential.   Plaintiff's public website contains exhaustive information regarding its products and extensive pricing information.  (*Id.* at ¶ 20).  Given the public nature of Plaintiff's products and prices, Loeb did not receive any formal training regarding Plaintiff's business during his tenure there.  (*Id.* at ¶ 22).

Plaintiff also alleges that Defendants solicited a handful of customers.  (Compl. ¶ 47).  Plaintiff does not, however, allege that Loeb – or any Defendant – caused any customer to switch their business to ALN since Loeb became an employee of ALN.  (Compl. ¶¶ 48-52).  Indeed, as of this date, none of Plaintiff's customers have switched their business to ALN.  (Loeb Aff. at ¶ 25).  Nor has Loeb solicited any customers whose identities were unknown to ALN at the time ALN hired him.  (*Id.* at ¶ 23).  Indeed, as Plaintiff acknowledges, many of Plaintiff's current customers were previously ALN's customers (and vice-versa).  (Compl. ¶ 48; Loeb Aff. at ¶ 24).  Simply put, it is not uncommon for customers to move between ALN and CourtAlert.  (Loeb Aff. at ¶ 24).

Loeb did not bring any information to ALN that it did not already possess or could not ascertain through publicly-available sources.  (Loeb Aff. at ¶ 26).  Nor did Bustan ask him to do so.  (*Id.*)  To the extent Loeb identified any potential customers once he started working at ALN, those leads came from his knowledge of the industry and ALN's established contacts, not Plaintiff's internally-stored information.  (Loeb Aff. at ¶ 27).

## LEGAL ARGUMENT

### I. LEGAL STANDARD

Defendants move to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), or, alternatively, for summary judgment under Federal Rule of Civil Procedure 56.  "Rule 12(b)(6) gives district courts two options when matters

outside the pleadings are presented in response to a 12(b)(6) motion:  the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material."  *Fonte v. Bd. of Mgrs. Of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir. 1988).  Courts may consider, however, "any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference … without converting the motion to dismiss into a motion for summary judgment."  *Pearson Capital Partners LLC v. James River Ins. Co.*, 151 F.Supp.3d 392, 400 (S.D.N.Y. 2015) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002)).  Under either standard, Plaintiff's claims are ripe for, and subject to, dismissal as a matter of law.

### a.  Motion to Dismiss under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 868 (2007)).  This standard requires "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  "[T]he factual allegations must 'possess enough heft to show that the pleader is entitled to relief.'"  *Live Person, Inc. v. 24/7 Customer, Inc.*, 83 F.Supp.3d 501, 507 (S.D.N.Y. 2015) (quoting *Twombly*, 550 U.S. at 557).

"In considering a motion to dismiss [under Rule 12(b)(6)] for failure to state a claim upon which relief may be granted, the court is to accept as true all facts alleged in the complaint" and "draw all reasonable inferences in favor of the plaintiff."  *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007) (citations omitted).  "Although 'a

court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions[.]'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).  For purposes of a motion to dismiss, "[a] complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotations and citation omitted).

### b.  Summary Judgment under Rule 56.1

Summary judgment may be granted if the record "shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Big Vision Private, Ltd. v. E.I. Dupont De Nemours & Co.*, 1 F.Supp.3d 224, 251 (S.D.N.Y. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  "Once the moving party has asserted facts showing that the non-movant's claims or affirmative defenses cannot be sustained, 'the party opposing summary judgment may not merely rest on the allegations or denials of his pleading; rather, his response, by affidavits or otherwise as provided in the Rule, must set forth specific facts demonstrating that there is a genuine issue for trial.'" *Mediavilla v. City of New York*, 259 F. Supp.3d 82, 94 (S.D.N.Y. 2016) (quoting *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009)).

**II.** **PLAINTIFF'S FIRST AND SECOND CAUSES OF ACTION FOR MISAPPROPRIATION OF TRADE SECRETS UNDER BOTH THE FEDERAL DEFEND TRADE SECRETS ACT AND NEW YORK COMMON LAW FAIL BECAUSE THE ITEMS ALLEGED TO HAVE BEEN MISAPPROPRIATED DO NOT CONSTITUTE "TRADE SECRETS"**

Under New York law, "[a] plaintiff claiming misappropriation of a trade secret must prove: (1) it possessed a trade secret, and (2) defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means." *E.J. Brooks Co. v. Cambridge Sec. Seals*, 31 N.Y.3d 441, 452 (2018).  Similarly, "[t]o state a

claim for misappropriation under the [federal Defend Trade Secrets Act ("DTSA")], a plaintiff must allege that it possessed a trade secret that the defendant misappropriated." *Iacovacci v. Brevet Holdings, LLC*, 437 F.Supp.3d 367, 380 (S.D.N.Y. 2020) (citing 18 U.S.C. § 1836(b)(1)).  It is axiomatic under either the DTSA or New York law that "[a] party claiming misappropriation must first demonstrate the existence of a trade secret." *Am. Bio Medica Corp. v. Bailey*, 341 F.Supp.3d 142, 157 (N.D.N.Y. 2018).

New York courts consider the following factors in determining the type of information that qualifies as a trade secret:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and to its competitors; (5) the amount of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Spectrum Dynamics Med., Ltd. v. GE*, 2020 U.S. Dist. LEXIS 102660, 18-cv-11386[4] at *42 (S.D.N.Y. June 1, 2020) (quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir. 2009)).  Plaintiff's naked ruminations do not satisfy any of these factors.

It is black letter law that "[a] trade secret must first of all be secret" and therefore "information that is readily available from public sources is not entitled to trade secret protection."  *Schroeder v. Pinterest Inc.*, 133 A.D.3d 12, 29 (1st Dep't 2015) (internal citations omitted); *accord ENV Servs., Inc. v. Alesia*, 10 Misc.3d 1054(A), 809 N.Y.S.2d 481 (Sup. Ct. 2005) ("Where the information at issue is public knowledge, or could be acquired easily and duplicated, it is not a trade secret.").  "[C]ourts have held that there can be no trade secret protection, as a matter of law, if the secrecy is necessarily lost when the

---

[4] No Westlaw citation is available for this opinion, so the Lexis citation and docket number are provided.

design or product is placed on the market." *Spectrum Dynamics Med., Ltd.*, 2020 U.S. Dist. LEXIS 102660 at *42 (citations omitted). Indeed, in *Spectrum Dynamics*, this Court dismissed a trade secret misappropriation claim to the extent it was based on publicly available information. *Id.* at *43.

Mere "[c]onclusory allegations that something constitutes a trade secret … are insufficient [to state a claim]." *Mastercraft Decorators, Inc. v. Orlando*, 356 F.Supp.3d 259, 270 (W.D.N.Y. 2018) (quoting *Sorias v. Nat'l Cellular USA, Inc.*, 124 F.Supp.3d 244, 258 (E.D.N.Y. 2015)). In *Mastercraft Decorators*, plaintiff conclusorily alleged that its customer lists were "trade secrets" without any details concerning (i) whether the information was not "generally available" in public sources, (ii) the extent to which information was known by employees and others involved in the business, (iii) plaintiff's measures to safeguard the information at issue, (iv) the value of the information to the plaintiff and competitors, (v) plaintiff's efforts or expenses to develop the information and (vi) the ease or difficulty for competitors to properly acquire the same information. *Id.* at 271-72. As plaintiff failed to allege sufficient facts to support its self-serving and conclusory assertion that its customer list was a protectable "trade secret," the court granted defendant's motion to dismiss. *Id.* at 274.

*Mastercraft Decorators* is directly on point. As in *Mastercraft Decorators*, Plaintiff summarily alleges, without any factual support, that its customer and contact lists are confidential "trade secrets." This is inadequate. Courts have consistently held that customer lists "are generally not considered confidential unless information contained therein is not known in the trade and discoverable only through extraordinary efforts." *Battenkill Veterinary Equine v. Cangelosi*, 1 A.D.3d 856, 858 (3d Dep't 2003); *accord DeWitt Stern*

*Grp., Inc. v. Eisenberg*, 257 F.Supp.3d 542, 586 (S.D.N.Y. 2017) (dismissing breach of contract and misappropriation claims where alleged confidential information was "known throughout the industry, [was] not a secret, and [could] be easily found through simple searches"); *see also Marcone APW, LLC v. Servall Co.*, 85 A.D.3d 1693, 1695 (4th Dep't 2011) ("customer lists are not entitled to trade secret protection if such lists are readily ascertainable from sources outside plaintiffs' business"); *Price Paper & Twine Co. v. Miller*, 182 A.D.2d 748, 749 (2d Dep't 1992) ("[A] court will not enjoin a former employee's use of an employer's customer list where, as here, the customers are all openly engaged in business and where their names and addresses can be found by those engaged in the trade merely by reviewing public documents[.]").

"In order to establish confidential customer information status, it is incumbent upon plaintiff to demonstrate that its customers are not known to the trade and are discoverable only by extraordinary methods." *Colonize.com, Inc. v. Perlow*, 2003 WL 24256576 (N.D.N.Y. Oct. 23, 2003) (citing *Empire Farm Credit v. Bailey*, 239 A.D.2d 855, 856 (3d Dep't 1997)). In *Colonize.com*, the District Court rejected plaintiff's claim for trade secret misappropriation where the information at issue consisted merely of "customer lists containing information regarding its customer relationships, including its pricing terms for each customer; information regarding the success of its ad campaigns, its strategic marketing and business information; and, data regarding the company's relationships with vendors and third-party suppliers." *Id.* at *12.

*Membler.com LLC v. Barber*, 2013 WL 5348546 (E.D.N.Y. Sept. 23, 2013), is also particularly instructive. In *Membler.com*, plaintiff asserted a claim for trade secret misappropriation based on defendant's alleged access to and exploitation of "confidential

and proprietary information, including industry contacts." *Id.* at *12. The District Court granted defendant's motion to dismiss, finding that "Plaintiff raises no allegations to suggest that these 'industry contacts' were a secret or not otherwise accessible. *Id.*

Plaintiff's allegations here are similarly insufficient to support its empty assertion that the information at issue is a "trade secret." More specifically, Plaintiff alleges that Loeb accessed certain information while in its employ. (Compl. ¶39(a)-(i)). The documents Plaintiff identifies in paragraph 39 (a), (b), (c), (e), (f), and (g) are all lists of current and potential customers, contacts, and leads relating to large law firms. This information does not, as a matter of law, constitute a trade secret, particularly where, as here, it is "known throughout the industry," *Eisenberg*, 257 F. Supp.3d at 586, and "readily ascertainable from sources outside plaintiffs' business," *Marcone APW, LLC*, 85 A.D.3d at 1695.

Categories (d), (h) and (i) in paragraph 39 refer to alleged analyses comparing Plaintiff's products with its competitors, lists of items monitored for particular customers, and special services offered to customers. These likewise do not rise to the level of protectable secrets, as ALN – or any other competitor or third party – could readily discover this information simply by reviewing public information regarding the products or speaking with current CourtAlert customers (and therefore prospective ALN customers) about the products and services they currently use. Indeed, ALN sales representatives already undertake these investigations and ask these questions during standard pre-screening interviews of prospective clients. (Loeb Aff. at ¶ 21). Because this information "could be acquired easily and duplicated, it is not a trade secret." *ENV Servs., Inc.*, 809 N.Y.S.2d 481 (citing *Ashland Mgmt. v Janien*, 82 N.Y.2d 395, 397 (1993)).

Nor does Plaintiff allege that it took any measures to guard the secrecy of this information while it employed Loeb, or even following Loeb's departure.  To that end, Plaintiff never even sought injunctive relief despite its supposed belief that Loeb retained certain confidential information.  The Complaint likewise does not allege the value of the information to the business or its competitors.  Plaintiff similarly does not provide any facts regarding any effort or money expended in connection with developing the information at issue, as New York law requires.  *See Mastercraft Decorators*, *supra*.

Stated simply, Plaintiff has failed, at every level, to allege facts supporting its naked assertion that the information at issue is a "trade secret."  Accordingly, the Court should dismiss Plaintiff's trade secret misappropriation claims as a matter of law.

III.   **PLAINTIFF'S THIRD CAUSE OF ACTION FOR BREACH OF CONTRACT AND FOURTH CAUSE OF ACTION FOR TORTIOUS INTERFERENCE WITH CONTRACT FAIL BECAUSE THE INFORMATION ALLEGED TO HAVE BEEN DISCLOSED IS NOT CONFIDENTIAL AND DEFENDANT LOEB'S NON-SOLICITATION RESTRICTIVE COVENANT IS UNENFORCEABLE AS MATTER OF LAW**

Plaintiff does not – and cannot – state a claim for breach of contract because (1) the information Plaintiff alleges Loeb disclosed was publicly available and therefore not confidential; and (2) the non-solicitation provision in Loeb's contract is unenforceable as it is unreasonably overbroad, Loeb did not provide sufficiently "unique or extraordinary" services, and the information sought to be protected is already publicly available. Consequently, absent a viable breach of contract claim, Plaintiff's tortious interference with contract claim also fails, *a fortiori*, and must likewise be dismissed.

a.   **Plaintiff Cannot Establish a Breach of Contract Claim**

"To state a claim for breach of contract under New York law, Plaintiff must plead plausible facts regarding: (1) the existence of a contract; (2) performance of the plaintiff's

obligations; (3) breach by the defendant; and (4) damages to the plaintiff caused by the breach." *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp.3d 501, 515 (S.D.N.Y. 2015) (citing *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011)).

### i. Loeb's Alleged Disclosures Do Not Constitute a Breach of the Agreement's Confidentiality Provision

As detailed above, the information Plaintiff alleges Loeb misappropriated and disclosed to ALN consisted entirely of widely available public information readily ascertainable from many sources besides Plaintiff. *See* Section II, *supra*. The Agreement explicitly provides that Loeb may disclose information that is "generally available from public sources through no fault of [Loeb]." (Compl., Ex A, at p.2). As all the information that Plaintiff cites is generally available to the public, and is not remotely a trade secret, Loeb did not breach the Agreement's confidentiality provision. *See Boccardi Capital Sys., Inc. v. D.E. Shaw Laminar Portfolios, LLC*, 355 Fed. Appx. 516, 518 (2d Cir. 2009) (holding that information publicly available could not support claim for breach of confidentiality clause); *Spectrum Dynamics Med., Ltd.*, 2020 U.S. Dist. LEXIS 102660 (granting motion to dismiss contract claim based on confidentiality provision because alleged trade secrets publicly disclosed); *Buhler v. Michael P. Maloney Consulting, Inc.*, 299 A.D.2d 190, 191 (1st Dep't 2002) (rejecting claim for breach of parties' nondisclosure agreement because "[a] contact list prepared by plaintiff based on her knowledge of the financial services industry and on information that was publicly available does not qualify as a trade secret and is not entitled to protection").

### ii. Loeb's Non-Solicitation Restrictive Covenant Is Unenforceable

Plaintiff's alleged breach of the Agreement's non-solicitation provision likewise warrants dismissal. Fundamentally, "a non-solicitation provision is a type of restrictive

covenant." *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F.Supp.2d 489, 510 (S.D.N.Y. 2011).   New York has adopted a "general public policy favoring robust and uninhibited competition … which militate[s] against sanctioning the loss of a man's livelihood." *Reed Elsevier Inc. v. TransUnion Holding Co.*, 2014 WL 97317 (S.D.N.Y. Jan. 9, 2014) (quoting *Amer. Inst. of Chem. Eng'rs v. Reber-Frier Co.*, 682 F.2d 382, 387 (2d Cir. 1982)).   Accordingly, "[r]estrictive covenants are generally disfavored by law and are only enforced under limited circumstances." *Heartland Secs. Corp. v. Gerstenblatt*, 2000 WL 303274 (S.D.N.Y. Mar. 22, 2000) (citing *Bus. Networks of N.Y., Inc. v. Complete Network Sols., Inc.*, 696 N.Y.S.2d 433, 435 (1st Dep't 1999)).

It is axiomatic that a restrictive covenant "will be enforced only if 'it is reasonable in time and area, necessary to protect the employer's legitimate interests, not harmful to the general public, and not unreasonably burdensome to the employee.'" *Pure Power Boot Camp*, 813 F.Supp.2d at 510 (quoting *Reed, Roberts Assoc. v. Strauman*, 40 N.Y.2d 303, 307 (1976)).   "[A]n employer's legitimate business interests are generally limited 'to the protection against misappropriation of the employer's trade secrets or of confidential customer lists, or protection from competition from a former employee whose services are unique or extraordinary." *Pure Power Boot Camp*, 813 F. Supp.2d at 510 (quoting *BDO Seidman v. Hirschberg*, 93 N.Y.2d 382, 389 (1999)).

Here, Plaintiff seeks to enforce an overly broad 24-month non-solicitation restrictive covenant against Loeb, who worked for Plaintiff for only 10 months.   The non-solicitation provision is unenforceable because (1) it is overly broad and unduly burdensome, (2) Loeb did not provide the "unique or extraordinary" services to Plaintiff required to undergird the

restrictive covenant Plaintiff seeks to enforce, and (3) the information sought to be protected is "readily available from public sources."

> 1. The Non-Solicitation Clause is Overbroad and Unduly Burdensome

It is well settled that "[a] restrictive covenant will only be enforced if it is reasonable in time and geographic area." *Natsource LLC v. Paribello*, 151 F. Supp.2d 465, 470 (S.D.N.Y. 2001). Courts generally refuse to enforce restrictive covenants with no geographic limitation. *See, e.g.*, *Crye Precision LLC v. Bennettsville Printing*, 755 Fed. Appx. 34, 37 (2d Cir. 2018) (affirming summary judgment based on unenforceability of unlimited geographic scope); *Great Lakes Carbon Corp. v. Koch Indus., Inc.*, 497 F. Supp. 462, 471 (S.D.N.Y. 1980) (restrictive covenant "fails the test of reasonableness" where "[t]here is no geographic limitation whatsoever"). Courts also routinely determine that restrictive covenants lasting two years are unenforceable, particularly where the restriction is coupled with a broad geographic scope. *See, e.g.*, *Design Partners, Inc. v. Five Star Elec. Corp.*, 2018 U.S. Dist. LEXIS 131299, 12-cv-2949, n.24[5] (E.D.N.Y. Feb. 24, 2018) (two-year period unenforceable); *Heartland Secs. Corp*, 2000 WL 303274 (S.D.N.Y. Mar. 22, 2000) (same).

The Agreement's non-solicitation provision contains no geographic limitation. Moreover, Plaintiff seeks to limit Loeb's ability to earn a living for 24 months, more than twice the total duration of his employment with Plaintiff. This broad geographic scope, combined with the lengthy temporal duration (particularly given Loeb's brief tenure), renders the clause unduly burdensome and therefore unenforceable as a matter of law.

---

[5] No Westlaw citation is available for this opinion, so the Lexis citation and docket number are provided.

Additionally, "a non-solicitation provision will be rejected as overly broad if it seeks to bar the employee from soliciting customers of the employer with whom the employee did not acquire a relationship through his or her employment, or if the provision extends to customers recruited through the employee's own independent efforts." *Pure Power Boot Camp*, 813 F.Supp.2d at 511 (quoting *BDO Seidman*, 93 N.Y.2d at 392); *see also N.Y. Merchant Servs., Inc. v. Yoo*, 2015 WL 5096013, *8 (Sup. Ct. Aug. 31, 2015) (Non-solicitation covenant unenforceable "if it seeks to bar the employee from soliciting or providing services to customers with whom the employee never acquired a relationship through his or her employment") (quoting *Brown & Brown, Inc. v. Johnson*, 115 A.D.3d 162, 170-71 (4th Dep't 2014)).  Put simply, the restrictions serve no ***legitimate*** business purpose, as they are not designed to protect relationships that Loeb developed on Plaintiff's behalf.  Instead, they are a transparent means to illegally obstruct free and fair competition.

More specifically, the non-solicitation clause at issue prohibits Loeb from "solicit[ing] or accept[ing] business from any Customers or prospective Customers of the Company" and defines "Customer" to include any "business entity or individual with whom the Company has done business or with whom the Employee has actively communicated with [*sic*] during the twelve (12) month period preceding the termination of his or her employment."  (Compl., Ex. A, at p.4).  This unduly expansive prohibition, which includes Plaintiff's customers with whom Loeb had no prior relationship and customers whom Loeb recruited independently, further renders the clause unenforceable.  If enforced, the provision would prevent Loeb from contacting ALN's customers if they were also Plaintiff's customers at any point during the previous twelve months.  Put another way, the clause prohibits Loeb from communicating with ***any current ALN customer*** if Plaintiff had

unsuccessfully attempted to solicit the customer away from ALN during the past year. Defendants respectfully submit that such a result is facially absurd.

### 2.  Mr. Loeb Did Not Provide "Unique or Extraordinary" Services

Plaintiff's claim also fails because courts will enforce restrictive covenants only where the employee performed "unique or extraordinary" services.  *Pure Power Boot Camp, Inc.*, 813. F. Supp.2d at 510.   These services "have traditionally been associated with various categories of employment where the services are dependent upon an employee's special talents; such categories include musicians, professional athletes, actors and the like." *Earthweb Inc. v. Schlack*, 71 F.Supp.2d 299, 313 (S.D.N.Y. 1999).  To support a restrictive covenant, "[i]t must appear that [an employee's] services are of such character as to make his replacement impossible or that the loss of such services would cause the employer irreparable injury." *Amer. Inst. of Chem. Eng'rs*, 682 F.2d at 390, n.9. As New York's Appellate Division admonished: "the fact that [a former employee] was a knowledgeable and experienced sales representative does not establish that his skills were unique or that he was irreplaceable." *Briskin v. All Seasons Servs.*, 206 A.D.2d 906, 907 (4th Dep't 1994).

Here, Plaintiff does not allege that Loeb provided "unique" or "extraordinary" services.  Indeed, the only description Plaintiff provides for Loeb's role and responsibilities is that his "title was Account Executive" and Plaintiff hired him, without any prior industry experience, "to serve as CourtAlert's main salesperson."  (Compl. ¶ 29).  Indeed, Loeb had no experience with Court-related services prior to his employment with CourtAlert and received no specialized training for his position (because none was necessary).  (Loeb Aff. at ¶ 22).  Accordingly, the restrictive covenant is further unenforceable because Plaintiff does not, and cannot, allege that Loeb furnished any "unique or extraordinary" services.

3. *The Purported Information Is Readily Available from Public Sources*

"Generally, where the customers are readily ascertainable outside the employer's business as prospective users or consumers of the employer's services or products, trade secret protection will not attach, and courts will not enjoin the employee from soliciting his employer's customers." *Yoo*, 2015 WL 5096013 (quoting *Leo Silfen, Inc. v. Cream*, 29 N.Y.2d 387, 392 (1972)). "With respect to the alleged use of confidential customer lists by a former employee, a restrictive employment covenant will not be enforced unless the plaintiff can demonstrate that the information contained in the lists was not readily available through other sources." *Pure Power Boot Camp*, 813 F.Supp.2d at 510.

As set forth above, Plaintiff has used this litigation in a vain effort to protect information that is readily ascertainable through the internet and other publicly available sources. Stated differently, Plaintiff cannot seriously contend that the names of large law firms and legal departments or identities of key decision makers constitute a "confidential trade secret." The restrictive covenant is therefore unenforceable, and Plaintiff's breach of contract claim fails as a matter of law.

**b. Plaintiff's Tortious Interference with Contract is Meritless**

"Under New York law, the elements of a tortious interference with contract claim are '(1) that a valid contract exists, (2) that a third party had knowledge of that contract, (3) that the third party intentionally and improperly procured the breach of the contract, and (4) that the breach resulted in damage to the plaintiff.'" *Linkco, Inc. v. Fujitsu, Ltd.*, 230 F. Supp.2d 492, 495 (S.D.N.Y. 2002) (quoting *Albert v. Loksen*, 239 F.3d 256, 274 (2d Cir. 2001)). "[U]nder traditional principles of New York law, a party may not recover for tortious inducement of breach of a contract without proving that the underlying contract has

been breached." *Fonar Corp. v. Magnetic Resonance Plus*, 957 F.Supp. 477, 481 (S.D.N.Y. 1997) (quoting *Baylis v. Marriott Corp.*, 906 F.2d 874, 877 (2d Cir. 1990)).  Similarly, a cause of action for tortious interference with contract must fail where the contractual provision upon which the claim is based is unenforceable.  *See, e.g.*, *Pure Power Boot Camp*, 813 F. Supp.2d at 532 ("Plaintiffs cannot satisfy the first element of their tortious interference with contract claim" because "the remaining provisions of the Employment Agreement at issue are … invalid and unenforceable"); *Buhler*, 299 A.D.2d at 191 (dismissing tortious interference with contract claim because "the noncompetition agreement is unenforceable and there was no breach of the confidentiality agreement").

Here, Plaintiff's breach of contract claim rests upon alleged disclosure of information that is not subject to the Agreement's confidentiality provision.  Plaintiff further predicates the claim upon an unenforceable non-solicitation clause.  In other words, Plaintiff alleges that ALN and Bustan tortiously interfered with an Agreement that is either irrelevant (respecting confidentiality) or unenforceable (respecting non-solicitation).  That being so, Plaintiff's tortious interference with contract claim likewise warrants dismissal.

## IV.   PLAINTIFF'S FIFTH CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY FAILS BECAUSE IT IS DUPLICATIVE OF PLAINTIFF'S BREACH OF CONTRACT CLAIM AND DEFENDANT LOEB'S ALLEGED ACTIONS DO NOT CONSTITUTE A BREACH OF FIDUCIARY DUTY

To state a claim for breach of fiduciary duty, "a plaintiff must show the existence of a fiduciary duty, a knowing breach of that duty, and damages resulting from the breach." *Eisenberg*, 257 F. Supp.3d at 585 (citing *Johnson v. Nextel Commc'ns*, 660 F.3d 131, 138 (2d Cir. 2011)).  However, "an action in tort cannot lie unless the plaintiff alleges 'that the defendant breached a duty independent of its duties under the contract[.]'"  *Spectrum Dynamics*, 2020 U.S. Dist. LEXIS 102660 at *37-38 (quoting *Carvel Corp. v. Noonan*, 350

F.3d 6, 16 (2d Cir. 2003)).  Thus, "[a] cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand." *William Kaufman Org., Ltd. v. Graham & James LLP*, 703 N.Y.S.2d 439, 442 (1st Dep't 2000).  Plaintiff's breach of fiduciary duty claim simply regurgitates its breach of contract claim (*see* Compl. ¶¶ 77-79, 92-93), and therefore should be dismissed.

Even if Plaintiff's duplicative allegations did not bar its breach of fiduciary duty claim (and they do), the claim still fails.  Loeb's alleged actions do not constitute a breach of fiduciary duty because the misappropriated information is readily ascertainable and therefore not protectable. *See, e.g.*, *Eisenberg*, 257 F. Supp.3d at 585-86 (granting summary judgment dismissing breach of fiduciary duty claim where plaintiff "fail[ed] to identify any legally protected confidential information or trade secret it owns that [defendant] used" and defendant "could have obtained the same information directly from the customers"); *Jay's Custom Stringing v. Jongwan Yu*, 2001 WL 761067, *8 (S.D.N.Y. July 6, 2001) (plaintiff unlikely to prevail on claim for breach of fiduciary duty where defendant did not misappropriate its confidential information).  Plaintiff therefore fails to state a claim for breach of fiduciary duty, and the Fifth Cause of Action must be dismissed.

## V.   PLAINTIFF'S SIXTH CAUSE OF ACTION FOR UNFAIR COMPETITION CLAIMS FAILS BECAUSE IT IS DUPLICATIVE OF PLAINTIFF'S FLAWED MISAPPROPRIATION CLAIM

Plaintiff's unfair competition claim, based on the same underlying allegations as its other claims, fails because it is duplicative of its trade secret misappropriation claim.

"Under New York law, an unfair competition claim involving misappropriation usually concerns the taking and use of the plaintiff's property to compete against the plaintiff's own use of the same property.' *ITC Ltd. v. Punchgini*, 9 N.Y.3d 467, 478 (N.Y. 2007) (quotation omitted).  "An unfair competition claim can only survive dismissal of a

duplicative misappropriation claim if the two rest on different factual predicates." *Ferring B.V. v. Allergan, Inc.*, 4 F.Supp.3d 612, 629 (S.D.N.Y. 2014) ("Since Plaintiffs' claims for misappropriation and unfair competition are virtually identical, if the Court … finds that the misappropriation is deficient or untimely, the unfair competition claim would also fail."); *see also Uni-Sys., LLC v. U.S. Tennis Ass'n*, 350 F.Supp.3d 143, 179 (E.D.N.Y. 2018) ("Plaintiff's unfair competition claim fails to state a cause of action as it fails to allege tortious conduct separate from its claim of misappropriation of trade secrets.").

Here, the allegations underpinning Plaintiff's unfair competition claims (pled in conjunction with common law misappropriation against all defendants in the Second Cause of Action and separately against ALN in the Sixth Cause of Action) parrot its misappropriation claim. (*See* Compl. at ¶¶ 69-73 98-99). Plaintiff cannot sustain a separate unfair competition claim based on the same alleged misconduct. Even if Plaintiff could advance its unfair competition claim (and it cannot), it would fail for the same reasons: the allegedly misappropriated items are not trade secrets. Accordingly, Plaintiff's unfair competition claim should be dismissed.

## VI. Plaintiff's Seventh Cause of Action for Unjust Enrichment Fails Because It Duplicates Plaintiff's Other Claims and Because Plaintiff Fails to Allege Any Direct Benefit to ALN

Plaintiff's unjust enrichment claim (the Seventh Cause of Action) similarly fails because it duplicates its other claims. Moreover, Plaintiff fails to allege any "direct benefit" to ALN, which is a necessary element of Plaintiff's *prima facie* case.

"To state an unjust enrichment claim under New York law, plaintiff must allege that (1) defendant was enriched; (2) at plaintiff's expense; and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Mueller*

*v. Michael Janssen Gallery PTE Ltd.*, 225 F.Supp.3d 201, 207 (S.D.N.Y. 2016) (quoting *Diesel Props S.r.l. v. Greystone Bus. Credit II, LLC*, 631 F.3d 42, 55 (2d Cir. 2011)).  An unjust enrichment claim is cognizable "only in unusual situations when … circumstances create an equitable obligation running from the defendant to the plaintiff."  *Corsello v. Verizon, N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012).  It "is not a catchall cause of action to be used when others fail" and "is not available where it simply duplicates, or replaces, a conventional contract or tort claim."  *Id.*; *see also In re Fyre Festival Litig.*, 399 F.Supp.3d 203, 222 (S.D.N.Y. 2019) (finding "the existence of an express contract and plaintiff's assertion of tort claims arising from the same conduct bar the unjust enrichment claim").

Plaintiff's unjust enrichment claim simply mirrors the other claims set forth in the Complaint and is based on the same alleged conduct: Defendants' purported misappropriation of Plaintiff's trade secrets and breach of the Agreement's confidentiality and non-solicitation provisions.  Plaintiff's contract and tort claims thus bar this claim for unjust enrichment.  As the New York Court of Appeals instructs, plaintiffs cannot establish a cause of action for unjust enrichment where an independent contract or tort claims exists: "To the extent [plaintiff's other] claims succeed, the unjust enrichment claim is duplicative; if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects."  *Corsello*, 18 N.Y.3d at 791 (dismissing unjust enrichment claim).

An unjust enrichment claim also requires an allegation that a plaintiff "conferred a direct benefit on" a defendant.  *Kaplan, Inc. v. Yun*, 16 F.Supp.3d 341, 353 (S.D.N.Y. 2014) (citing *Segal v. Cooper*, 944 N.Y.S.2d 54, 67 (1st Dep't 2012).  Allegations that a defendant was "enriched only indirectly" at plaintiff's expense "fail[] to state a claim for unjust enrichment under New York State law."  *Kaplan*, 16 F.Supp.3d at 353.

Here, Plaintiff alleges that ALN benefited indirectly through Loeb's alleged trade secret misappropriation, which would ostensibly allow it to "accelerate[] development of its own competing product and gain[] an unfair commercial advantage over" Plaintiff. (Compl. ¶ 101). This alleged indirect economic advantage cannot support an unjust enrichment claim. *Kaplan*, 16 F.Supp.3d at 353.

## VII.   PLAINTIFF HAS EXPERIENCED NO DAMAGES

As set forth above, Plaintiff fails to allege facts sufficient to sustain its claims. Even if Loeb had misappropriated trade secrets or disclosed confidential information (which he did not), Plaintiff's claims fail because it has suffered no damages. In fact, the Complaint does not allege that Plaintiff lost any customers as a result of Loeb's activities.

Plaintiff's own actions confirm it experienced no damages. Plaintiff waited more than four months after Loeb resigned, and more than three months after the last communication between the parties' counsel, to file this lawsuit. Notably, Plaintiff did not even attempt to seek injunctive relief, which is routine in trade secret and restrictive covenants cases. Plaintiff's reason for failing to seek this relief is transparent: It does not have reason to believe Loeb or ALN possess any confidential information which could give ALN a competitive advantage. Nor has Plaintiff suffered any damages, much less irreparable harm. Plaintiff's actions and allegations make clear that its true motivation for filing this lawsuit was not to protect itself from unlawful behavior, but to exploit the judicial process to falsely smear and discredit a rival and thereby gain a competitive business advantage they have been unable to achieve in the marketplace. The Court should dismiss Plaintiff's claims with prejudice.

## **<u>CONCLUSION</u>**

For these reasons, Defendants American LegalNet, Inc., Erez Bustan, and Robert Loeb respectfully request that the Court grant this motion and dismiss Plaintiff's Complaint in its entirety and with prejudice.

Respectfully submitted,

GREENBERG TRAURIG, LLP

*/s/ Ryan P. O'Connor*

RYAN P. O'CONNOR
ROBERT H. BERNSTEIN
(*pro hac vice* forthcoming)

Attorneys for Defendants
American LegalNet, Inc., Erez Bustan, and
Robert Loeb

Dated: November 25, 2020