IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COURTALERT.COM, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN LEGALNET, INC., EREZ BUSTAN, and ROBERT LOEB, <br><br> Defendants. | No. 1:20-cv-07739 |

**DECLARATION OF ROBERT LOEB**

ROBERT LOEB, of full age, hereby declares as follows:

1. I am a Regional Sales Manager for Defendant AmericanLegalNet, Inc. ("ALN"), and a former employee of Plaintiff CourtAlert.com, Inc. ("CourtAlert").

2. I submit this Affidavit in support of Defendants' Motion to Dismiss Complaint for Failure to State a Claim or, in the Alternative, for Summary Judgment.

3. I am personally familiar with the facts stated in this Affidavit, and if called as a witness would testify to such facts under oath.

4. ALN offers an integrated suite of litigation workflow tools designed to help law firms dramatically improve the efficiency of their litigation attorneys, docketing, court and agency forms, case alerts, efiling solutions and practice support teams.

5. ALN's software platform, which centralizes and automates manual litigation tasks, is further enhanced with various value-added content and services, including constantly updated rules-based deadlines managed by the largest team of court-rules attorneys in the space,

the largest database of regularly revised court and agency forms, and a team of professional services experts providing training and best practices.

6. CourtAlert and ALN sometimes compete for the same customers because certain products both companies provide are similar, but ALN's products are different than Plaintiff's products because ALN offers integrated solutions, rather than separate services.

7. CourtAlert hired me July 2019 to serve as its Regional Sales Manager.

8. In connection with my CourtAlert employment, CourtAlert provided me with an employment agreement (the "Agreement") which included confidentiality and non-solicitation provisions.

9. A true and correct copy of the Agreement is attached as Exhibit A to the Complaint filed by CourtAlert in this matter.

10. On May 15, 2020, I resigned my position with CourtAlert and returned the laptop issued to me by CourtAlert.

11. In late May, I determined that on May 17, 2020, CourtAlert accessed my personal e-mail accounts without my authorization, apparently using log-in credentials which were embedded in the laptop I returned to CourtAlert.

12. On May 26, 2020, I commenced employment with ALN.

13. On June 9, 2020, CourtAlert's attorneys sent a letter to ALN accusing me of breaching the Agreement's confidentiality and non-solicitation provisions. A true and correct copy of the June 9 letter is attached hereto as Exhibit A.

14. The June 9 letter included an e-mail that CourtAlert claimed it retrieved from my computer.

15. On June 12, 2020, ALN's counsel sent a letter response to CourtAlert and its counsel. A true and correct copy of the June 12 letter is attached hereto as Exhibit B.

16. The June 12 letter advised CourtAlert that I had not breached the Agreement's provisions, explained that the Agreement's non-solicitation provision is unenforceable, and also demonstrated that CourtAlert doctored the e-mail referenced in CourtAlert's counsel's June 9 letter.

17. The letter further demanded $80,000 in unpaid wages CourtAlert still owed me.

18. Neither ALN nor I received any response to the June 12 letter.

19. CourtAlert's customers (and ALN's customers) are large law firms and law departments. Their identities are either commonly known or easily discoverable through an internet search, and contacts for these customers can be readily identified through law firm websites, LinkedIn, the Managing Attorneys' and Clerks' Association (an association of over 100 firm managing attorneys and clerks located in New York City), telephone calls to law firms, and other means.

20. CourtAlert's public website contains exhaustive information regarding its products and extensive pricing information.

21. Additionally, during sales pitches, I and other ALN sales representatives ask potential customers about the products and services they currently use.

22. Given the public nature of CourtAlert's products and prices, I did not receive any formal training regarding CourtAlert's business during my tenure of employment there.

23. I have not solicited any clients whose identities were unknown to ALN at the time ALN hired me.

24. Indeed, many of CourtAlert's current clients have previously been ALN's clients (and vice-versa). It is not uncommon for clients to move between ALN and CourtAlert.

25. As of this date, none of CourtAlert's customers have switched their business to ALN.

26. I did not bring any information to ALN that it did not already possess or could not ascertain through publicly-available sources. No one at ALN asked me to take any information to ALN that was not already publicly available.

27. To the extent I identified any potential clients once I started working at ALN, those leads came from my knowledge of the industry and ALN's established contacts, not CourtAlert's internally-stored information.

I declare under penalty of perjury that the foregoing is true and correct and that this Declaration was executed on the date indicated below.

Dated: 11/25/2020

*Rob Loeb*
ROBERT LOEB