**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

COURTALERT.COM, INC.,

                Plaintiff,

      v.

AMERICAN LEGALNET, INC.,
EREZ BUSTAN, and ROBERT LOEB,

                Defendants.

No. 1:20-cv 07739 (VSB)

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Jason Cyrulnik
Paul Fattaruso
Joseph M. Delich
ROCHE CYRULNIK FREEDMAN LLP
90 Park Avenue, 19th Floor
New York, NY 10016
jcyrulnik@rcfllp.com
pfattaruso@rcfllp.com
jdelich@rcfllp.com

*Counsel for Plaintiff CourtAlert, Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iv

PRELIMINARY STATEMENT .....................................................................................1

RELEVANT FACTS ......................................................................................................2

ARGUMENT .................................................................................................................2

I.    COURTALERT PROPERLY STATES CLAIMS FOR
      MISAPPROPRIATION OF TRADE SECRETS ...........................................2

      A.    The Existence of Trade Secrets Is a Question of Fact That Cannot Be
            Resolved Before Discovery. ......................................................................3

      B.    The Complaint Generally Identifies the Trade Secrets at Issue and Alleges
            Facts Sufficient To Show They Were Secret. ............................................5

            1.    CourtAlert's trade secrets include highly detailed information beyond
                  mere "customer and contact lists" and were developed through substantial
                  efforts. .......................................................................................... 8

            2.    Defendants could not "readily discover" a log of all client interactions,
                  revenues, pricing, or a confidential new product still in development. ............. 10

II.   COURTALERT PLAINLY STATES CLAIMS FOR BREACH OF
      CONTRACT AND TORTIOUS INTERFERENCE ......................................12

      A.    The Enforceability of the Non-Solicitation Agreement Presents Questions of
            Fact That Cannot be Resolved Before Discovery. ....................................13

      B.    The Two-Year Non-Solicitation Agreement Is Not Unreasonable as Matter of
            Law. .........................................................................................................13

      C.    The Geographic Scope of the Agreement Is Not Unreasonable as a Matter of
            Law Due to the Reach of CourtAlert's Business. .......................................14

      D.    The Parties' Non-Solicitation Agreement Does Not Depend on Defendant
            Loeb's Services Being Unique or Extraordinary. .......................................16

      E.    Partial Enforcement Can Address Any Overly Broad Restrictions ............16

III.  COURTALERT'S BREACH OF FIDUCIARY DUTY CLAIM IS NOT
      DUPLICATIVE OF ITS CONTRACT CLAIM. ..........................................17

IV.   COURTALERT'S UNFAIR COMPETITION CLAIM IS NOT
      DUPLICATIVE OF ITS TRADE SECRET CLAIMS. .................................18

ii

V.    **COURTALERT'S UNJUST ENRICHMENT CLAIM ALLEGES A DIRECT BENEFIT TO ALN AND IS NOT DUPLICATIVE** .......................................................19

VI.   **COURTALERT SUFFICIENTLY PLEADS DAMAGES.** ...........................................20

CONCLUSION...................................................................................................................................21

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Alves v. Affiliated Home Care of Putnam, Inc.*,
No. 16-CV-1593 (KMK), 2017 WL 4350283 (S.D.N.Y. Sept. 28, 2017)................................ 15

*Am. Bldg. Maint. Co. of N.Y. v. Acme Prop. Servs., Inc.*,
515 F. Supp. 2d 298 (N.D.N.Y. 2007) ....................................................................... 9

*Amphenol Corp. v. Paul*,
993 F. Supp. 2d 100 (D. Conn. 2014) ...................................................................... 18

*Arista Coffee Inc. v. Casale*,
No. 18-CV-6237 (NGG), 2020 WL 1891882 (E.D.N.Y. Apr. 16, 2020) ................................ 21

*Art & Cook, Inc. v. Haber*,
416 F. Supp. 3d 191 (E.D.N.Y. 2017) ....................................................................... 8

*Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.*,
No. 14-CV-9687 (VEC), 2016 WL 4916969 (S.D.N.Y. Feb. 11, 2016) ................................ 19

*Barnet v. Drawbridge Special Opportunities Fund LP*,
No. 14-cv-1376, 2014 WL 4393320 (S.D.N.Y. Sept. 5, 2014) ................................ 19

*BDO Seidman v. Hirshberg*,
93 N.Y.2d 382 (N.Y. 1999) ..................................................................................... 16

*Business Intelligence Servs., Inc. v. Hudson*,
580 F. Supp. 1068 (S.D.N.Y.1984)........................................................................... 14

*Capstone Logistics Holdings, Inc. v. Navarrete*,
No. 17 CIV 4819 (GBD), 2020 WL 3429775 (S.D.N.Y. June 23, 2020)................................ 18

*Chevron U.S.A., Inc. v. Roxen Serv., Inc.*,
813 F.2d 26 (2d Cir. 1987)................................................................................... 3, 4

*Churchill Commc'ns Corp. v. Demyanovich*,
668 F. Supp. 207 (S.D.N.Y. 1987)........................................................................... 6

*Coachways, Inc. v. Vaccarello*,
No. 17-CV-5983 (SJ), 2018 WL 3716888 (E.D.N.Y. Aug. 3, 2018) ........................................ 5

*Colonize.Com, Inc. v. Perlow*,
No. 03-CV-466, 2003 WL 24256576 (N.D.N.Y. Oct. 23, 2003) ............................................ 10

*Compare Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*,
813 F. Supp. 2d 489 (S.D.N.Y. 2011)....................................................................... 20

*Devos, Ltd. v. Record*,
No. 15-CV-6916 (ADS) (AYS), 2015 WL 9593616 (E.D.N.Y. Dec. 24, 2015)............... 13, 15

*Dorset Indus., Inc. v. Unified Grocers, Inc.*,
893 F. Supp. 2d 395 (E.D.N.Y. 2012) ..................................................................... 10

*DoubleClick Inc. v. Henderson*,
No. 116914/97, 1997 WL 731413 (N.Y. Sup. Ct. Nov. 7, 1997) ........................................ 6, 11

*Elsevier Inc. v. Doctor Evidence, LLC*,
No. 17-CV-5540 (KBF), 2018 WL 557906 (S.D.N.Y. Jan. 23, 2018) .................................... 19

*Estee Lauder Companies Inc. v. Batra*,
430 F. Supp. 2d 158 (S.D.N.Y. 2006) ......................................................................................... 16

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
559 F.3d 110 (2d Cir. 2009) ........................................................................................................ 21

*Fung-Schwartz v. Cerner Corp.*,
No. 17-CV-233 (VSB), 2019 WL 4393022 (S.D.N.Y. Sept. 13, 2019) ................................. 18

*Geritrex Corp. v. Dermarite Indus., LLC*,
910 F. Supp. 955 (S.D.N.Y.1996) ............................................................................................... 21

*Greenwich Mills Co. v. Barrie House Coffee Co.*,
91 A.D.2d 398 (N.Y. App. Div. 1983) .......................................................................................... 7

*Iacovacci v. Brevet Holdings, LLC*,
437 F. Supp. 3d 367 (S.D.N.Y. 2020) ........................................................................................... 9

*Iannucci v. Segal Co.*,
No. 06 CIV. 4720 (PKL), 2006 WL 8407380 (S.D.N.Y. June 27, 2006) .............................. 14

*IDG USA, LLC v. Schupp*,
No. 10-CV-76S, 2010 WL 3260046 (W.D.N.Y. Aug. 18, 2010) ........................................... 11

*In re Dana Corp.*,
574 F.3d 129 (2d Cir. 2009) ........................................................................................................... 9

*Innovative Networks, Inc. v. Satellite Airlines Ticketing Centers, Inc.*,
871 F. Supp. 709 (S.D.N.Y. 1995) ............................................................................................... 15

*Insurent Agency Corp. v. Hanover Ins. Co.*,
No. 16 CIV. 3076 (LGS), 2018 WL 3979589 (S.D.N.Y. Aug. 20, 2018) .............................. 17

*Ivy Mar Co., Inc. v. C.R. Seasons Ltd.*,
907 F. Supp. 547 (E.D.N.Y.1995) ............................................................................................... 14

*Jinno Int'l Co. v. Premier Fabrics, Inc.*,
No. 12 CIV. 07820 LGS, 2013 WL 4780049 (S.D.N.Y. May 24, 2013) .................................. 4

*L.I. City Ventures v. Urban Compass, Inc.*,
No. 18 CIV. 5853 (PGG), 2019 WL 234030 (S.D.N.Y. Jan. 16, 2019) ................................. 18

*Lapp Insulators LLC v. Gemignani*,
No. 09-CV-0694A SR, 2011 WL 1198648 (W.D.N.Y. Mar. 9, 2011) ...................................... 4

*LinkCo, Inc. v. Fujitsu Ltd.*,
230 F. Supp. 2d 492 (S.D.N.Y. 2002) ......................................................................................... 20

*LivePerson, Inc. v. 24/7 Customer, Inc.*,
83 F. Supp. 3d 501 (S.D.N.Y. 2015) ........................................................................................... 19

*Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*,
　784 F.3d 78 (2d Cir. 2015)................................................................................ 21

*MacPhee v. Verizon Commc'ns Inc.*,
　No. 06-CV-7870(BSJ), 2008 WL 162899 (S.D.N.Y. Jan. 15, 2008) ...................... 19

*Mandelblatt v. Devon Stores, Inc.*,
　132 A.D.2d 162 (N.Y. App. Div. 1987) ................................................................ 17

*Marcone APW, LLC v. Servall Co.*,
　85 A.D.3d 1693 (N.Y. App. Div. 2011) ............................................................ 9, 10

*MasterCard Int'l Inc. v. Nike, Inc.*,
　164 F. Supp. 3d 592 (S.D.N.Y. 2016)............................................................. 13, 14

*Mastercraft Decorators, Inc. v. Orlando*,
　356 F. Supp. 3d 259 (W.D.N.Y. 2018) .................................................................. 7

*Medtech Prod. Inc. v. Ranir, LLC*,
　596 F. Supp. 2d 778 (S.D.N.Y. 2008)............................................................... 4, 11

*Membler.com LLC v. Barber*,
　No. 12-CV-4941 (JS) (GR), 2013 WL 5348546 (E.D.N.Y. Sept. 23, 2013)............. 7

*Musalli Factory for Gold & Jewelry v. JPMorgan Chase Bank*,
　261 F.R.D. 13 (S.D.N.Y.2009) ........................................................................... 17

*N. Atl. Instruments, Inc. v. Haber*,
　188 F.3d 38 (2d Cir. 1999)................................................................................... 8

*Next Commc'ns, Inc. v. Viber Media, Inc.*,
　No. 14-CV-8190 (RJS), 2016 WL 1275659 (S.D.N.Y. Mar. 30, 2016) ................... 4

Prezio Health Inc. v. Schenk,
　No. 13-CV-1463, 2016 WL 1367726 (D. Conn. Apr. 6, 2016)............................. 15

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*,
　813 F. Supp. 2d 489 (S.D.N.Y. 2011)................................................................. 17

*Reed Elsevier, Inc. v. Transunion Holding Co.*,
　2014 WL 97317 (S.D.N.Y. Jan. 9, 2014) ............................................................ 14

*Ritani, LLC v. Aghjayan*,
　880 F. Supp. 2d 425 (S.D.N.Y. 2012)................................................................. 17

*SD Prot., Inc. v. Del Rio*,
　498 F. Supp. 2d 576 (E.D.N.Y. 2007) ...................................................... 4, 5, 11, 16

*Sorias v. Nat'l Cellular USA, Inc.*,
　124 F.Supp.3d 244 (E.D.N.Y. 2015) .................................................................... 3

*Tesla Wall Sys., LLC v. Related Cos., L.P.*,
　No. 17-CV-5966 (JSR), 2017 WL 6507110 (S.D.N.Y. Dec. 18, 2017) ................... 4

*Ticor Title Ins. Co. v. Cohen*,
　173 F.3d 63 (2d Cir. 1999)................................................................................. 13

*Uni-Sys., LLC v. United States Tennis Ass'n, Inc.*,
   350 F. Supp. 3d 143 (E.D.N.Y. 2018) ...................................................................................... 3

*William Kaufman Org., Ltd. v. Graham & James LLP*,
   703 N.Y.S.2d 439 (App. Div. 2000) ...................................................................................... 17

Plaintiff, CourtAlert, Inc., respectfully submits this memorandum of law in opposition to the motion to dismiss filed by Defendants, American LegalNet, Inc. ("ALN"), Erez Bustan, and Robert Loeb.

## PRELIMINARY STATEMENT

Defendants were caught red-handed downloading CourtAlert's highly confidential trade secrets, information developed by CourtAlert's family-owned-and-run business through substantial efforts over the course of twenty years. This is the rare case with direct evidence of a disloyal employee conspiring with a competitor and a clear picture of precisely what was stolen.

In the face of the detailed allegations in CourtAlert's complaint, Defendants' motion offers no valid basis for dismissal and represents a desperate effort to avoid the inescapable facts of their misconduct. The federal and state-law trade secret claims (Counts I-II) cannot be dismissed because CourtAlert has sufficiently alleged the existence and misappropriation of trade secrets. The breach of contract and tortious interference claims (Counts III-IV) cannot be dismissed because enforceability of the non-solicitation clause in Loeb's employment presents classic questions of fact that cannot be resolved at the pleading stage. The remaining causes of action (Counts V-VII) cannot be dismissed because, contrary to Defendants' misguided arguments, those claims are not duplicative as a matter of law. Further, CourtAlert sufficiently alleges damages from Defendants' misconduct, including significant lost profits.

Defendants' arguments rely on ignoring or misconstruing CourtAlert's allegations and the relevant law. Defendants repeatedly fail even to apply the appropriate standard on a motion to dismiss, often citing decisions on summary judgment or even post-trial decisions. But they cannot avoid the reality that CourtAlert sufficiently pleads all of its claims, none of which are susceptible to resolution before the parties have conducted discovery. The Court should deny the motion to dismiss in its entirety.

## RELEVANT FACTS

Defendants' motion to dismiss largely reduces to a single argument: that the Complaint somehow fails to plead the existence of any trade secrets. In so doing, the motion fails to meaningfully engage with the Complaint, including the following allegations:

- CourtAlert's competitive advantage depends on confidential information that includes the software design and detail of its mechanics, the detailed workflow of CourtAlert's various services, as well as financial and business plans and strategies, client lists, and economic information. (Compl. ¶ 20.)

- The technical details of specific product offerings are highly confidential trade secrets closely guarded by CourtAlert and on which CourtAlert depends for its competitive advantage. (*Id.* ¶ 27.)

- During a ten-day period prior to suddenly leaving CourtAlert (from May 5 to May 14), Defendant Loeb took advantage of the office being empty due to COVID when he secretly accessed and sent CourtAlert's trade secrets to ALN, including lists of contacts, clients, and potential clients; confidential financial information on sales and revenues; internal analyses comparing CourtAlert's products with competing offerings; and details of new product development and testing. (*Id.* ¶¶ 32, 39–40.) This included confidential information regarding clients, sales volumes, and revenues that Loeb shared with Defendant Bustan in connection with his final commission demand and resignation. (Compl. ¶¶ 41, 45.)

- After forensic analysis revealed this communication with Bustan, CourtAlert sent a letter demanding Loeb cease and desist from disclosing confidential information. attaching a copy of the email with the confidential information redacted. (Compl. ¶ 45–46.) ALN's counsel responded three days later with a denial and attached an unredacted copy of Loeb's resignation email, (Compl. ¶ 46), which they later filed in unredacted form until CourtAlert's objections prompted them to remove and re-file with redactions. *See* ECF No. 14. ALN has attempted to leverage CourtAlert's confidential pricing information to its advantage in pitches to and negotiations with existing and potential CourtAlert clients. (*Id.* ¶¶ 3, 51–52.)

## ARGUMENT

## I.    COURTALERT PROPERLY STATES CLAIMS FOR MISAPPROPRIATION OF TRADE SECRETS

CourtAlert has sufficiently alleged the existence of protectable trade secrets, and Defendants' argument for dismissal of CourtAlert's misappropriation claim therefore fails. The

existence of trade secrets is a question of fact that can rarely be decided on a motion to dismiss. *Chevron U.S.A., Inc. v. Roxen Serv., Inc.*, 813 F.2d 26, 29 (2d Cir. 1987).

To state a claim, CourtAlert need only identify its trade secrets and allege facts sufficient to show that the information in question was secret. The Complaint readily meets this standard by identifying categories of trade-secret protected information and describing the steps CourtAlert took to protect it, including that CourtAlert required Defendant Loeb to enter into a confidentiality agreement as a condition of his employment.

Defendants' argument to the contrary depends on mischaracterizing the alleged trade secrets as mere customer lists—rather than an assortment of highly sensitive and customized confidential client and revenue information. At bottom, Defendants refuse to accept CourtAlert's allegations as true, as they are required to do at the motion-to-dismiss stage. Indeed, Defendants rely heavily on inapposite *summary judgment* decisions, which only reinforces that CourtAlert's claims should not be dismissed on the pleadings, but rather should proceed to discovery.

In short, CourtAlert's factual allegations are extensive and detailed, far exceeding the applicable pleading standard. For these reasons, the Court should deny the motion to dismiss the claims for trade secret misappropriation (Counts I–II).

A.  The Existence of Trade Secrets Is a Question of Fact
   That Cannot Be Resolved Before Discovery.

CourtAlert's specific allegations regarding its trade secrets exceed the pleading standard and preclude dismissal of its claims. To defeat CourtAlert's claim at the pleading stage, ALN must demonstrate that CourtAlert failed even to "generally identify the trade secrets at issue." *Uni-Sys., LLC v. United States Tennis Ass'n, Inc.*, 350 F. Supp. 3d 143, 171 (E.D.N.Y. 2018) (quoting *Sorias v. Nat'l Cellular USA, Inc.*, 124 F.Supp.3d 244, 258 (E.D.N.Y. 2015)). The law requires only descriptions "that are sufficient for the Court to discern the general contours of the

alleged trade secrets without compromising their secrecy and for Defendant to be put on notice of the claim." *Next Commc'ns, Inc. v. Viber Media, Inc.*, No. 14-CV-8190 (RJS), 2016 WL 1275659, at *3–5 (S.D.N.Y. Mar. 30, 2016) (finding trade-secret allegations "sufficient to survive a motion to dismiss because they enable the Court to generally define the trade secrets at issue"). There is "no heightened pleading requirement on actions brought under the DTSA." *Tesla Wall Sys., LLC v. Related Cos., L.P.*, No. 17-CV-5966 (JSR), 2017 WL 6507110, at *10 (S.D.N.Y. Dec. 18, 2017). "Detailed allegations concerning the nature of the alleged trade secrets *are not necessary at the pleading stage*." *Jinno Int'l Co. v. Premier Fabrics, Inc.*, No. 12 CIV. 07820 LGS, 2013 WL 4780049, at *5 (S.D.N.Y. May 24, 2013) (emphasis added); *see also Medtech Prod. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 789 (S.D.N.Y. 2008) ("specificity as to the precise trade secrets misappropriated is not required").

Beyond generally identifying the trade secrets at issue, CourtAlert need only "allege facts sufficient to show that the information in fact is secret—for example by disclosing the measures it took to protect the secrecy of the information." *Jinno*, 2013 WL 4780049, at *5. A plaintiff "has no obligation to reveal those secrets in the Complaint simply to prove that they exist." *SD Prot., Inc. v. Del Rio*, 498 F. Supp. 2d 576, 586 (E.D.N.Y. 2007).

Consistent with these applicable pleading standards, the "existence, *vel non*, of a trade secret usually is treated as a question of fact." *Chevron*, 813 F.2d at 29. For that reason, New York's trade secret factors "are difficult to apply in the absence of discovery, making their consideration sometimes futile in the context of a motion to dismiss." *Lapp Insulators LLC v. Gemignani*, No. 09-CV-0694A SR, 2011 WL 1198648, at *10 (W.D.N.Y. Mar. 9, 2011), *report and recommendation adopted*, 2011 WL 1213090 (W.D.N.Y. Mar. 29, 2011). Where, as here, the plaintiff "alleges the existence of legitimate trade secrets," it "would be premature" to

4

analyze questions of whether the alleged secrets are protectable, "which will require discovery in any event." *Del Rio*, 498 F. Supp. 2d at 585–86 (denying motion to dismiss); *see also Coachways, Inc. v. Vaccarello*, No. 17-CV-5983 (SJ), 2018 WL 3716888, at *3 (E.D.N.Y. Aug. 3, 2018) ("Without discovery, the Court cannot conclude whether [defendant] utilized any information that is fairly classified as a trade secret, proprietary or otherwise confidential.").

### B.  The Complaint Identifies the Trade Secrets at Issue and Alleges Facts Sufficient To Show They Were Secret.

CourtAlert far exceeds the pleading standard of generally identifying the trade secrets at issue and alleging facts sufficient to show they were, in fact, secret. CourtAlert has alleged the misappropriation of "client lists, product offerings, pricing, current status of marketing opportunities, and financial information including sales and revenue data." (Compl. ¶ 1.)

The Complaint also incorporates Loeb's employment agreement, which includes an express confidentiality provision that generally identifies the trade secret information at issue and constitutes evidence that it was, in fact, secret:

> The Employee understands that during the term of his or her employment, the Employee has been given unpublished and otherwise confidential information ("Confidential Information") both of a technical and non-technical nature, relating to the business of the Company and any of its parents, subsidiaries, divisions or affiliates, its actual or anticipated business, research, its technology or the implementation or exploitation thereof, including without limitation information the Employee and others have collected, obtained or created, information pertaining to or obtained from clients, customers, accounts, vendors, prices, costs, materials, processes, codes, material results, technology, development, ideas, plans, software codes and designs, algorithms, inventions, patent applications, notebooks, formulas, engineering designs, hardware configuration information, licenses, marketing plans and trade secrets including information disclosed to the Company by others under agreements to hold such information confidential.

(*Id.* ¶ 30, Ex. A § 3.)

The Complaint further alleges that CourtAlert "protects its confidential information by, among other things, restricted access with required username and password as well as other Information Technology routines, including logging and recording all activities and using cameras to monitor all doors through which a third party can access the information." (*Id.* ¶ 21.)

Such allegations alone are sufficient to state claims for trade secret misappropriation. But the Complaint goes further, providing a detailed breakdown of the records Loeb misappropriated and disclosed to ALN prior to his resignation, including:

- Confidential Salesforce records identifying all New York contacts, clients, and potential clients, as well as existing revenues for various CourtAlert products, including CourtAlert for PACER and Case Management. The Salesforce records included logs of client interactions that take place.

- Confidential list of services or software enhancements that CourtAlert programs and tests with clients for many months before introducing them to market.

- Other confidential lists of clients and potential clients, including leads generated through substantial effort and expense by CourtAlert.

- Confidential comparison of CourtAlert's Case Management product with ALN's and another competitor's offerings.

(*Id.* ¶ 39.)

These allegations are far from conclusory, and Defendants cannot to simply write off the alleged trade secrets as unprotected. Indeed, comprehensive pricing and revenue information coupled with the details of confidential new product development are exactly the sorts of information that courts regularly find to be protected trade secrets. *See DoubleClick Inc. v. Henderson*, No. 116914/97, 1997 WL 731413, at *5 (N.Y. Sup. Ct. Nov. 7, 1997) ("DoubleClick's confidential information about its pricing and customers constitutes trade secrets."); *Churchill Commc'ns Corp. v. Demyanovich*, 668 F. Supp. 207, 212 (S.D.N.Y. 1987) ("the contact person within a given company, as well as the product, pricing and volume

information about that company" have been held to be "subject to trade secret protection");

*Greenwich Mills Co. v. Barrie House Coffee Co.*, 91 A.D.2d 398, 405 (N.Y. App. Div. 1983)

(defendant salesmen could not establish as a matter of law that there were no trade secrets for

"confidential information concerning various customers' preferences for particular, precise

blends of coffee and the prices those customers were willing to pay for those blends").

Defendants cite only two cases where a trade secret claim was dismissed for insufficient

pleading. Both are readily distinguishable. In one, the plaintiff alleged in both the complaint and

proposed amended complaint only that defendants had "exploited industry contacts," without

explaining "exactly what confidential or proprietary information" the defendants

misappropriated. *Membler.com LLC v. Barber*, No. 12-CV-4941 (JS) (GR), 2013 WL 5348546,

at *12 (E.D.N.Y. Sept. 23, 2013). By contrast here, as detailed above, CourtAlert has done

precisely what the *Membler.com* plaintiff did not, identifying in detail "exactly what confidential

or proprietary information Defendants misappropriated."

In Defendants' other cited case, the plaintiff failed to "demonstrate secrecy by showing

substantial exclusivity and the use of precautionary measures to protect the trade secrets," having

only alleged "that the information is not 'generally available in public sources,' and that its

Employee Handbook advises employees that certain information, including 'information

concerning customers' is confidential." *Mastercraft Decorators, Inc. v. Orlando*, 356 F. Supp. 3d

259, 271 (W.D.N.Y. 2018). Here, by contrast, CourtAlert alleges "the use of confidentiality

agreements, password-protection, [and] sharing information with employees only on a need-to-

know basis"—all of which the court in *Mastercraft* explicitly stated were examples of

precautionary measures that demonstrate secrecy. *Id.*

7

In short, Defendants fail entirely to overcome the rule that "whether or not a customer list is a trade secret is generally a question of fact." *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 44 (2d Cir. 1999). Moreover, as discussed further below, CourtAlert's allegations establish that its trade secrets (i) consist of highly detailed information developed through substantial efforts, and (ii) are not readily discoverable information.

1. CourtAlert's trade secrets include highly detailed information beyond mere "customer and contact lists" and were developed through substantial efforts.

Contrary to Defendants' mischaracterization (at 11), CourtAlert's trade secrets do not consist merely of on "customer and contact lists"—as the allegations detailed above demonstrate. The complaint contains extensive allegations about information going beyond mere lists of names, including and especially CourtAlert's Salesforce records and the confidential development efforts.

Moreover, while a mere list of names will rarely be a trade secret, the Second Circuit has made clear: "Numerous cases applying New York law have held that where, as here, it would be difficult to duplicate a customer list because it reflected individual customer preferences, trade secret protection should apply." *N. Atl. Instruments, Inc.,* 188 F.3d at 44–46 ("customer list developed by a business through substantial effort and kept in confidence may be treated as a trade secret . . .provided the information it contains is not otherwise readily ascertainable"). "This is particularly true where the customer list contains individual customer preferences or represents the list owner's work to create a market for a new service or good." *Art & Cook, Inc. v. Haber*, 416 F. Supp. 3d 191, 195–96 (E.D.N.Y. 2017).

A customer list is also more likely to be a trade secret if it includes information related to a company's "operating practices and methods, including pricing and billing methods and marketing and selling practices; sales force support services; business opportunities; and the

strengths and weaknesses of [the company's] products and services." *Am. Bldg. Maint. Co. of N.Y. v. Acme Prop. Servs., Inc.*, 515 F. Supp. 2d 298, 309 (N.D.N.Y. 2007) ("information of this type may be considered confidential"); *Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 380–81 (S.D.N.Y. 2020) (denying motion to dismiss: "Although [the movant] contends that the above materials are 'a hodgepodge of generic categories of routine information,' these types of documents and information can constitute trade secrets.").

Where, as here, "the documents allegedly misappropriated by the individual defendants are not simply compilations of customer names and addresses or phone numbers," trade-secret protection is warranted. *Marcone APW, LLC v. Servall Co.*, 85 A.D.3d 1693, 1696 (N.Y. App. Div. 2011) (affirming preliminary injunction for trade secret misappropriation). Indeed, CourtAlert's "proprietary data relating to pricing, costs, systems, and methods" are squarely "protected by trade secret law." *In re Dana Corp.*, 574 F.3d 129, 152 (2d Cir. 2009). So is CourtAlert's "detailed information about each customer, including the names of individual contact persons, [and] customer-specific pricing information" that "was compiled through considerable effort by [plaintiff] and its employees over several years and was not available to the public." *Marcone*, 85 A.D.3d at 1696.

Nearly every "plus factor" that makes a customer list eligible for trade secret protection applies to CourtAlert's confidential materials, especially with respect to the Salesforce records, (Compl. ¶ 39(a)-(c)) (which include individual customer preferences, pricing, and revenues), and the confidential new product testing records (representing work to create a market for a new service or good), (Compl. ¶ 39(i)).

Indeed, few things could be more deserving of trade secret protection than proprietary solutions custom-designed for individual clients—especially when paired with pricing and

9

revenue information. Such information threatens to provide ALN a "competitive advantage" in

creating and marketing new products, and "servicing its current clients and creating new

business." *Marcone*, 85 A.D.3d at 1696.

As is apparently not unprecedented for defendants seeking to dismiss trade-secret claims,

the "cases cited by the Defendant for the proposition that a greater level of specificity is required

at the pleading stage for 'types of Confidential Information' are not only distinguishable, but in

certain cases, arguably misleading." *Dorset Indus., Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d

395, 411–12 (E.D.N.Y. 2012) (collecting cases). Indeed, Defendants' own cited cases in fact

undermine, rather than support, their position. *See, e.g.*, *Marcone*, 85 A.D.3d at 1696 (affirming

grant of expanded preliminary injunction to prohibit exploitation of misappropriated

information); *Colonize.Com, Inc. v. Perlow*, No. 03-CV-466, 2003 WL 24256576, at *5

(N.D.N.Y. Oct. 23, 2003) ("In addition to the names of its customers, a typical confidential list

would contain such sales information such as, precise discounts given to customers, pricing book

and data, usage reports and details of ordering and purchase histories.") Those cases

affirmatively support the trade-secret protection of CourtAlert's Salesforce records. CourtAlert's

allegations are thus more than sufficient to state claims for misappropriation.

       2.    Defendants could not "readily discover" a records of client interactions,
            revenues, pricing, or a confidential new product still in development.

In a final attempt to preclude the application of trade secret protections, Defendants make

the baseless argument (at 13) that they could "readily discover" CourtAlert's trade secrets

"simply by reviewing public information regarding the products or speaking with current

CourtAlert customers (and therefore prospective ALN customers) about the products and

services they currently use." This argument fails because "the secrecy of particular information is

10

an issue of fact and cannot be decided at the motion to dismiss stage." *Medtech,* 596 F. Supp. 2d at 805 (citing cases).

Even if Defendants' wishful claim were somehow true, moreover, it would *still* be insufficient to preclude trade secret status at this stage. In rejecting a similar argument "that pricing information is not confidential because customers will tell the sales representative what a competitor has charged for specific volumes and items in order to obtain a better price," one district court has explained: "Even assuming this is the case and that the customer provides truthful information, again, knowledge of particular item pricing is not the same as knowledge of pricing strategy or policy." *IDG USA, LLC v. Schupp*, No. 10-CV-76S, 2010 WL 3260046, at *10 (W.D.N.Y. Aug. 18, 2010), *aff'd in relevant part,* 416 F. App'x 86 (2d Cir. 2011).

The same principle applies here: the information Defendants may or may not obtain from customers cannot replicate the trade-secret information Defendants misappropriated from CourtAlert, which provides ill-gotten "knowledge of pricing strategy and policy." Moreover, the information on which the trade secret claims rely is not disclosed on CourtAlert's website, and "the fact that [it] posts some information about its company on its website does not necessarily mean that it has no protectable trade secrets." *Del Rio*, 498 F. Supp. 2d at 585–86 (denying motion to dismiss). There is certainly no information about Court's "actual financial arrangements with its clients provided" on the website. *DoubleClick Inc.*, 1997 WL 731413, at *4 (granting preliminary injunction).

More to the point, Defendants' fantastical claim that they can independently source the information is not plausible. For instance, CourtAlert's confidential new products still in development (Compl. ¶ 39(i)) cannot be "known throughout the industry" and "readily

ascertainable from sources outside plaintiffs' business" – unless of course that source was Defendant Loeb's breach of his confidentiality agreement.

CourtAlert has stated claims for misappropriation by identifying its trade secrets and alleging that they were, in fact, secret. The motion to dismiss Counts I and II of the complaint should be denied.

## II.    COURTALERT PLAINLY STATES CLAIMS FOR BREACH OF CONTRACT AND TORTIOUS INTERFERENCE

Defendants move to dismiss the breach of contract and tortious interference claims (Counts III and IV), on two grounds: (i) that the information allegedly disclosed was not confidential, and (ii) that the non-solicitation agreement is unreasonable and thus unenforceable as a matter of law. The first argument fails for many of the same reasons detailed above. CourtAlert sufficiently pleads that the information Defendants misappropriated is protected by the confidentiality agreement for the same reasons CourtAlert sufficiently pleads the existence of trade secrets for its misappropriation claims.

Defendants' second argument fails because the reasonableness of the non-solicitation agreement represents a classic question of fact that cannot be resolved on a motion to dismiss. CourtAlert sufficiently pleads facts sufficient to support the existence of an enforceable agreement, and that is all that is required at this stage. Defendants' contentions that the agreement is somehow facially unreasonable are refuted by clear case law. None of agreement's terms (separately or together) establish that the agreement is unenforceable as a matter of law. Even if the non-solicitation agreement's terms were unenforceable, moreover, CourtAlert's claims still could not be dismissed because the Court can partially enforce the agreement by severing any unreasonable terms.

12

For those reasons, the Court should deny Defendants' motion to dismiss Counts III and IV for breach of contract and tortious interference.

    A.  The Enforceability of the Non-Solicitation Agreement Presents
          <u>Questions of Fact That Cannot Be Resolved Before Discovery.</u>

Without the benefit of discovery, courts typically decline to make specific findings about the reasonableness of a contractual covenant because the "determination of the enforceability of a restrictive covenant focuses on the particular facts and circumstances giving context to the agreement." *MasterCard Int'l Inc. v. Nike, Inc.*, 164 F. Supp. 3d 592, 601 (S.D.N.Y. 2016) (citation omitted); *see also Devos, Ltd. v. Record*, No. 15-CV-6916 (ADS) (AYS), 2015 WL 9593616, at *12–15 (E.D.N.Y. Dec. 24, 2015). Courts enforce such covenants "to the extent necessary (1) to prevent the employee's solicitation or disclosure of trade secrets, (2) to prevent the employee's release of confidential information regarding the employer's customers, or (3) in those cases where the employee's services to the employer are deemed special or unique." *Id.* (quoting *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 70 (2d Cir.1999)).

Accordingly, courts consistently deny motions to dismiss on reasonableness grounds so long as (1) there is precedent enforcing similar restrictions, and (2) it is "plausible that specific facts will be elicited during discovery" that could establish reasonableness. *Devos*, 2015 WL 9593616, at *12–15.

    B.  The Two-Year Non-Solicitation Agreement
          <u>Is Not Unreasonable as Matter of Law.</u>

There is nothing unreasonable about a two-year non-solicitation agreement, let alone unreasonable as a matter of law. Many courts have enforced similar (or longer) restrictions and found them to be entirely reasonable. *See, e.g.*, *MasterCard*, 164 F. Supp. 3d at 601–02 ("New York courts have upheld as reasonable one year and two year non-solicitation provisions");

*Iannucci v. Segal Co.*, No. 06 CIV. 4720 (PKL), 2006 WL 8407380, at *6 (S.D.N.Y. June 27, 2006) (finding three-year restriction reasonable and collecting similar cases).

Defendants cite decisions—including a decision following a bench trial—in which a court ultimately determined that the two-year term at issue, based on the facts of those cases, was not reasonable. None of those decisions purport to pronounce a blanket rule striking down all two-year non-solicitation provisions as a matter of law at the pleadings stage. To the contrary, a motion to dismiss fails unless the term is so extreme that no court could find it reasonable under any circumstances. Defendants do not and cannot meet that standard, as the many decisions enforcing restrictions of equal or longer duration establish.

C.   The Geographic Scope of the Agreement Is Not Unreasonable as a Matter of Law Due to the Reach of CourtAlert's Business.

Defendants again improperly ask this Court to resolve factual issues on a motion to dismiss, in disregard of the applicable standard. The relevant inquiry is whether the geographic scope of the non-solicitation agreement here could be found reasonable by a factfinder under any plausible circumstances, with the benefit of a full factual record. Of course, a factfinder could reasonably conclude that the geographic scope is reasonable.

Restrictive covenants of "broad or unlimited geographic scope have been upheld where such restrictions were reasonable in view of the specific facts of the case." *Ivy Mar Co., Inc. v. C.R. Seasons Ltd.*, 907 F. Supp. 547, 559 (E.D.N.Y.1995) (citing *Business Intelligence Servs., Inc. v. Hudson*, 580 F. Supp. 1068, 1073 (S.D.N.Y.1984) (finding covenant reasonable despite unlimited geographic scope due to international nature of plaintiff's business)). For example, "where an employer's business is conducted worldwide to a global customer base, 'the lack of a geographic restriction is necessary.'" *MasterCard*, 164 F. Supp. 3d at 601–02 (quoting *Reed Elsevier, Inc. v. Transunion Holding Co.*, 2014 WL 97317, at *7 (S.D.N.Y. Jan. 9, 2014)); *see*

14

*also Innovative Networks, Inc. v. Satellite Airlines Ticketing Centers, Inc.*, 871 F. Supp. 709, 728–29 (S.D.N.Y. 1995) ("geographic scope encompassing the continental United States" deemed "reasonable in light of the national scope of INI's business.").

CourtAlert is based in New York but conducts business with large national and international law firms. (Compl. ¶ 16.) Given those facts, it is plausible that discovery will elicit facts to support the reasonableness of the agreement's geographic scope. Given the "reach of the Plaintiff's business operations, at this time there is no principled basis for the Court to conclude that the proposed temporal and geographic limitations are any more restrictive than needed to protect the Plaintiff's business from" further violations of the agreement. *Devos,* 2015 WL 9593616, at *14 (granting preliminary injunction).

Beyond those failures, Defendants' argument is also factually wrong. The non-solicitation agreement specifically restricts Loeb from conducting business with existing CourtAlert customers or prospective customers with whom he had communicated during his employment with CourtAlert. The courts have made clear that such qualifications operate as *de facto* geographic limitations sufficient to preclude the agreement being unenforceable as a matter of law. *See, e.g.*, *Alves v. Affiliated Home Care of Putnam, Inc.*, No. 16-CV-1593 (KMK), 2017 WL 4350283, at *4 (S.D.N.Y. Sept. 28, 2017) (agreeing with other courts that "a specific clause barring an employee from soliciting the employee's accounts that existed when the employee left . . . adequately fixed a geographic area limitation.") (quoting *Prezio Health Inc. v. Schenk*, No. 13-CV-1463, 2016 WL 1367726, at *4 (D. Conn. Apr. 6, 2016).

Defendants' argument that the definition of "customer" is overbroad is, again, premature because discovery will aid in determining whether the agreement is appropriately restrictive to protect CourtAlert's trade secrets and confidential information. *See, e.g.*, *Del Rio*, 498 F. Supp.

2d at 585–86 (denying motion to dismiss on grounds that discovery and "specific facts" were needed to analyze whether agreement was reasonably necessary).

### D. The Parties' Non-Solicitation Agreement Does Not Depend on Defendant Loeb's Services Being Unique or Extraordinary.

Defendants misstate the law when they assert (at 20) that "courts will enforce restrictive covenants only where the employee performed 'unique or extraordinary' services." In reality, there are at least *three* situations in which courts will enforce restrictive covenants. Defendants identify only one of them. Courts also enforce restrictive covenants "to prevent the employee's solicitation or disclosure of trade secrets" and "to prevent the employee's release of confidential information regarding the employer's customers." *Del Rio*, 498 F. Supp. 2d at 585. The complaint alleges both these grounds.

### E. Partial Enforcement Can Address Any Overly Broad Restrictions.

Defendants' arguments for dismissal based on the scope of the employment agreement fail for the additional reason that the Court can resolve any overly broad restrictions through partial enforcement. "Courts need not employ an all or nothing approach to the enforcement of employee restrictive covenants." *Estee Lauder Companies Inc. v. Batra*, 430 F. Supp. 2d 158, 180 (S.D.N.Y. 2006).

> Indeed, New York courts have "expressly recognized and applied the judicial power to sever and grant partial enforcement for an overbroad employee restrictive covenant." Pursuant to this rule, partial enforcement may be justified so long as "the employer demonstrates an absence of overreaching, coercive use of dominant bargaining power, or other anti-competitive misconduct, but has in good faith sought to protect a legitimate business interest, consistent with reasonable standards of fair dealing."

*Id.* (quoting *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 394 (N.Y. 1999)) (citation omitted).

16

CourtAlert's non-solicitation agreement reflects a good faith attempt to protect legitimate interests. Accordingly, even if the Court were to determine that the agreement was overly broad in some way, the appropriate remedy is partial enforcement, not dismissal.

## III.   COURTALERT'S BREACH OF FIDUCIARY DUTY CLAIM IS NOT DUPLICATIVE OF ITS CONTRACT CLAIM

"It is well settled that the same conduct which may constitute the breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by contract but which is independent of the contract itself." *Mandelblatt v. Devon Stores, Inc.*, 132 A.D.2d 162, 167–68 (N.Y. App. Div. 1987). This is often the case when a former employee misappropriates trade secrets and confidential information—precisely what happened here. "Under the tort theory of a 'disloyal employee,'" a breach of fiduciary duty claim "can be made regardless of the existence of the Employment Agreement." *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 526–27 (S.D.N.Y. 2011).

Defendants' sole cited case in support of their "duplicative claim" theory is inapposite, not least because it did not involve a breach of fiduciary duty claim against a former employee. *See William Kaufman Org., Ltd. v. Graham & James LLP*, 703 N.Y.S.2d 439, 442 (N.Y. App. Div. 2000). Moreover, "New York courts generally avoid dismissing a claim of breach of fiduciary duty . . . because it usually involve[s] a question of fact: whether someone reposed trust and confidence in another who thereby gains a resulting superiority or influence." *Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 455 (S.D.N.Y. 2012) (alterations in original) (quoting *Musalli Factory for Gold & Jewelry v. JPMorgan Chase Bank,* 261 F.R.D. 13, 26 (S.D.N.Y.2009)); *Insurent Agency Corp. v. Hanover Ins. Co.*, No. 16 CIV. 3076 (LGS), 2018 WL 3979589, at *5 (S.D.N.Y. Aug. 20, 2018) ("If MacDonald is found to have misappropriated trade secrets . . . then he was in breach of his confidentiality agreement and his fiduciary duty to Insurent.").

For these reasons, Defendants' motion to dismiss Count V for breach of fiduciary duty should be denied.

## IV.    COURTALERT'S UNFAIR COMPETITION CLAIM IS NOT DUPLICATIVE OF ITS TRADE SECRET CLAIMS

CourtAlert's sixth cause of action for unfair competition is not duplicative because it addresses distinct conduct. Count II specifically concerns Defendants' misappropriation of trade secrets. (Compl. ¶¶ 64–73.) The tort of unfair competition is broader, and "does not require proof that the information misappropriated constituted a trade secret." *L.I. City Ventures v. Urban Compass, Inc.*, No. 18 CIV. 5853 (PGG), 2019 WL 234030, at *12 (S.D.N.Y. Jan. 16, 2019). Rather, where the information at issue "would not otherwise qualify as a trade secret, the unauthorized physical taking and exploitation of internal company documents, including detailed customer information by an employee for use in his future business or employment is to be enjoined as unfair competition." *Id.* (quoting *Amphenol Corp. v. Paul*, 993 F. Supp. 2d 100, 112 (D. Conn. 2014), *aff'd*, 591 F. App'x 34 (2d Cir. 2015)); *see also Fung-Schwartz v. Cerner Corp.*, No. 17-CV-233 (VSB), 2019 WL 4393022, at *9 (S.D.N.Y. Sept. 13, 2019) ("Misappropriation of trade secrets is distinct from the tort of unfair competition.").

CourtAlert's unfair competition claim thus concerns information that may not rise to the level of a trade secret, as well as ALN's unethical practice of poaching employees to acquire such information. *See Capstone Logistics Holdings, Inc. v. Navarrete*, No. 17 CIV 4819 (GBD), 2020 WL 3429775, at *5 (S.D.N.Y. June 23, 2020) ("Considering this Court's finding that Defendants breached their contracts with Plaintiffs, including by poaching Plaintiffs' clients and employees, and misappropriated Plaintiffs' trade secrets, it is clear that Defendants engaged in unfair competition."). That claim is particularly appropriate where Defendants have telegraphed

their intent to contest the extent of trade-secret protection over the information they

misappropriated.

For these reasons, the second and sixth causes of action are not duplicative, and the

motion to dismiss Count VI for unfair competition should be denied.

## V.     COURTALERT'S UNJUST ENRICHMENT CLAIM ALLEGES A DIRECT BENEFIT TO ALN AND IS NOT DUPLICATIVE

"Generally, 'a claim for unjust enrichment may be pleaded in the alternative to other

claims.'" *Elsevier Inc. v. Doctor Evidence, LLC*, No. 17-CV-5540 (KBF), 2018 WL 557906, at

*2 (S.D.N.Y. Jan. 23, 2018) (quoting *Barnet v. Drawbridge Special Opportunities Fund LP*, No.

14-cv-1376, 2014 WL 4393320, at *22 (S.D.N.Y. Sept. 5, 2014)).

"Courts 'generally dismiss claims for [unjust enrichment] on the pleadings only when it

is clear from the face of the complaint that there exists an express contract that clearly controls.'"

*Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.*, No. 14-CV-9687 (VEC), 2016 WL 4916969, at

*8 (S.D.N.Y. Feb. 11, 2016) (quoting *MacPhee v. Verizon Commc'ns Inc.*, No. 06-CV-7870

(BSJ), 2008 WL 162899, at *6 (S.D.N.Y. Jan. 15, 2008)).

Accordingly, courts regularly deny motions to dismiss claims for unjust enrichment

against competitors with whom there is no relevant contract, notwithstanding the assertion of

claims for unfair competition or tortious interference. *See e.g.*, *LivePerson, Inc. v. 24/7*

*Customer, Inc.*, 83 F. Supp. 3d 501, 519 (S.D.N.Y. 2015) (denying motion to dismiss claims for

misappropriation, breach of contract, intentional interference with existing or prospective

economic relationship, and unjust enrichment). In *LivePerson*, the court held the "claim for

unjust enrichment [was] established" by allegations that the "Defendant improperly obtained

Plaintiff's intellectual property and confidential information" and "caused Plaintiff's clients to

terminate their dealings with Plaintiff in favor of Defendant." *Id.*

CourtAlert similarly pleads a claim for unjust enrichment by alleging that ALN misappropriated trade secrets and benefitted by, among other things, accelerating development of a competing product. *Compare Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 535 (S.D.N.Y. 2011) ("Defendants did confer a benefit upon themselves, however, in stealing Pure Power's confidential business documents. Moreover, this benefit was clearly acquired at Plaintiffs' expense.").

Defendants' motion to dismiss Count VII for unjust enrichment should be denied.

## VI.   COURTALERT SUFFICIENTLY PLEADS DAMAGES

Defendants' assertion that CourtAlert failed to plead damages is baseless. "Damages in unfair competition cases are typically determined by plaintiff's lost profits resulting from defendant's improper conduct." *LinkCo, Inc. v. Fujitsu Ltd.*, 230 F. Supp. 2d 492, 503 (S.D.N.Y. 2002).

Defendants ignore CourtAlert's detailed allegations of lost profits, including CourtAlert being forced to alter its pricing to salvage a deal (Compl. ¶ 51) and flat-out losing a client because of ALN's misconduct (Compl. ¶ 52). Defendants' assertion that the complaint fails to plead that CourtAlert suffered damages as a result of Defendants' improper scheme simply cannot be reconciled with the actual language of the complaint, which plainly includes such allegations. (*See, e.g.*, Compl. ¶ 63 ("As a result of such misappropriation, CourtAlert has suffered damages in an amount to be determined at trial.").)

Defendants' confounding suggestion that CourtAlert was somehow required to seek a preliminary injunction to pursue its claims badly misstates the law. CourtAlert does seek injunctive relief (Compl. at 22), but there is simply no support whatsoever for Defendants' wishful rule that a plaintiff is required to seek the extraordinary relief of a *preliminary* injunction in the first instance.

20

Indeed, it is common in misappropriation cases for courts to deny preliminary injunctive relief and simultaneously deny a motion to dismiss on the theory that money damages are likely to be sufficient. *E.g.*, *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 119 (2d Cir. 2009) ("As Judge Conner has observed, where there is no danger that a misappropriator will disseminate proprietary information, 'the only possible injury that [the] plaintiff may suffer is loss of sales to a competing product ... [which] should be fully compensable by money damages.'") (quoting *Geritrex Corp. v. Dermarite Indus., LLC,* 910 F. Supp. 955, 966 (S.D.N.Y.1996) (Conner, J.)).

Finally, New York law permits recovery of nominal damages. Defendants' argument thus fails for that independently sufficient reason. *Arista Coffee Inc. v. Casale*, No. 18-CV-6237 (NGG), 2020 WL 1891882, at *6–7 (E.D.N.Y. Apr. 16, 2020) (allegation of "damages in an amount not yet determined or ascertainable," while speculative, "does not merit dismissal because New York law allows a plaintiff to recover at least nominal damages for breach of contract claims") (citing *Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 784 F.3d 78, 87 (2d Cir. 2015)).

## <u>CONCLUSION</u>

For these reasons, CourtAlert respectfully submits that the Court should deny Defendants' motion to dismiss in its entirety.


Dated: December 9, 2020
New York, New York

/s/ Jason Cyrulnik
Jason Cyrulnik
Paul Fattaruso
Joseph Delich
**ROCHE CYRULNIK FREEDMAN LLP**
99 Park Street, Suite 1910
New York, New York 10016

21

t: (646) 970-7512
jcyrulnik@rcfllp.com
pfattaruso@rcfllp.com
jdelich@rcfllp.com

*Attorneys for Plaintiff*

22