UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                       :

COURTALERT.COM, INC.             :

                                         :

                      Plaintiff,     :                20-CV-7739 (VSB)

                                         :

            - against -         :         **OPINION & ORDER**

                                       :

AMERICAN LEGALNET, INC.,     :
EREZ BUSTAN, and ROBERT LOEB   :

                                       :

                   Defendants.  :
-------------------------------------------------------:
                                         X
                                         :

ROBERT LOEB,                 :

                                       :

                    Third-Party  :
                    Plaintiff,   :

                                         :

           - against -         :

                                       :

YANIV SCHILLER,          :

                                       :

                    Third-Party  :
                    Defendants.  :
-------------------------------------------------------X

<u>Appearances</u>:

Jason Colin Cyrulnik
Paul Fattaruso, II
Cyrulnik Fattaruso LLP
New York, New York

*Counsel for CourtAlert.com, Inc. and Yaniv Schiller*

Robert Harris Bernstein
Michael James Slocum
Ryan Patrick O'Connor
Greenberg Traurig LLP
Florham Park, New Jersey

*Counsel for American LegalNet, Inc., Erez Bustan, and Robert Loeb*

VERNON S. BRODERICK, United States District Judge:

 Plaintiff CourtAlert.com, Inc. ("CourtAlert" or "Plaintiff") initiated this action by filing a complaint on September 18, 2020, alleging that Defendant Robert Loeb ("Loeb"), a former CourtAlert employee, improperly took its trade secrets and confidential information for the benefit of American LegalNet, Inc. ("ALN"), CourtAlert's competitor, and Defendant Erez Bustan ("Bustan", together with Loeb and ALN, "Defendants"), President of ALN (Doc. 1, "Complaint").  On November 25, 2020, Defendant Robert Loeb filed counterclaims (Doc. 12, "Counterclaims") and a third-party complaint (Doc. 13, "Third-Party Complaint" or "TPC") alleging that CourtAlert failed to pay his commission and illegally accessed his personal email.

 Before me is Defendants' motion to dismiss CourtAlert's Complaint, or in the alternative for summary judgment, as well as Plaintiff's motion to dismiss the Counterclaims and Third-Party Complaint filed by Loeb.  For the reasons that follow, Defendants' motion to dismiss CourtAlert's Complaint is GRANTED IN PART and DENIED IN PART.  The motion to dismiss Loeb's Counterclaims and Third-Party Complaint is GRANTED IN PART and DENIED IN PART, and Loeb is granted leave to amend his New York Labor Law Counterclaim.

I.     **Factual Background**

A.   ***Allegations from CourtAlert's Complaint***[1]

CourtAlert provides various products and services to large law firms and the law departments of companies, including case management software and case monitoring services. (Compl. ¶¶ 16–18.)  CourtAlert considers its competitive advantage as a business to "depend[] on confidential information" that "includes" the "software design" of its products, "as well as financial and business plans and strategies, client lists, and economic information."  (*Id.* ¶ 20.) ALN provides products and services that are similar to those marketed and sold by CourtAlert. (*See id.* ¶¶ 22–28.)

In July 2019, CourtAlert hired Loeb "to serve as [its] main salesperson."  (*Id.* ¶ 29.) Loeb's employment was subject to an employment agreement (the "Employment Agreement"). (*Id.* ¶ 30; *see also* Doc. 1-1 ("Employment Agreement").)  The Employment Agreement contains confidentiality and non-solicitation terms that provide in relevant part as follows:

> **Confidentiality Agreement.**  (a) The Employee understands that during the term of his or her employment, the Employee has been given unpublished and otherwise confidential information ("Confidential Information") both of a technical and non-technical nature, relating to the business of the Company . . . .  The Employee agrees to observe all Company policies and procedures concerning such Confidential Information. The Employee further agrees not to disclose or use, either during the Employee's employment or at any time thereafter, any Confidential Information unless authorized to do so by the Company in writing, except that the Employee may disclose and use such information when clearly necessary in the performance of his or her duties for the Company. The Employee's obligations under this

---

[1] The following facts are taken from the Complaint filed by CourtAlert in this action (Doc. 1), as well as from documents integral to the Complaint.  I assume the factual allegations set forth in the Complaint, and in those documents, to be true for purposes of the motion to dismiss the Complaint.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. . . .  Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." (internal quotations and citations omitted)); *see* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").  My references to these facts should not be construed as a finding as to their veracity, and I make no such findings.

Agreement will continue with respect to Confidential Information, whether or not the Employee's employment is terminated, until the Confidential Information becomes generally available from public sources through no fault of the Employee.

. . .

**Non-Solicitation.**  (a) During the Employee's employment with the Company and for a period of twenty-four (24) months following the termination thereof, the Employee shall not, directly or indirectly, on his or her own behalf or on behalf of any person, firm or corporation, or in any capacity whatsoever, solicit or accept business from any Customers or prospective Customers of the Company or encourage any Customer or prospective Customer not to do business with the Company. . . . (c) For purposes of this Agreement, the term "Customer(s)" shall mean any individual, corporation, partnership, business, municipality, governmental authority or other entity, whether for profit or not-for-profit public, privately held, or owned by a government that is a business entity or individual with whom the Company has done business or with whom the Employee has actively communicated with during the twelve (12) month period preceding the termination of his or her employment.

(*Id.* ¶ 30 (alterations in original) (quoting Employment Agreement ¶¶ 3, 5).)[2]

On May 15, 2020, Loeb left CourtAlert to become ALN's regional sales manager for the northeast.  (*Id.* ¶ 31.)  Based on an examination of Loeb's work-issued laptop, CourtAlert came to believe that Loeb "accessed and downloaded significant volumes of CourtAlert confidential information and shared it with ALN."  (*Id.* ¶ 32.)   A "recovered file shows that Defendant Erez Bustan, . . . ALN's president, . . . drafted" the language for the letter Loeb sent to CourtAlert to end his employment, and this file "shows that even before Loeb resigned, he was providing . . . CourtAlert's confidential revenue and pricing information to ALN."  (*Id.* ¶¶ 33–34, 45.)  Loeb also accessed all manner of what CourtAlert considers "confidential information" in the final weeks of his employment, including "records identifying all New York contacts, clients, and potential clients."  (*See id.* ¶ 39.)  Among other things, Loeb accessed CourtAlert's customer

---

[2] Hereinafter, I will refer to these terms as the "Confidentiality Provision" and the "Non-Solicitation Provision."

relationship management ("CRM") database, which includes all of CourtAlert's interactions with its clients.  (*Id.* ¶ 39(a) & n.1.)

On June 9, 2020, CourtAlert, through counsel, sent a cease and desist letter to Defendants, demanding that Loeb cease disclosing confidential information to ALN.  (*Id.* ¶ 46.) Between June through September of 2020, Loeb met with at least four of CourtAlert's current and former clients.  (*Id.* ¶¶ 48–52.)  For example, in July of 2020, "CourtAlert learned that Loeb was attempting to sell ALN's E-Docket solution to Potential Client 1, with whom CourtAlert had been negotiating a prospective subscription" for its competing service "during Loeb's tenure." (*Id.* ¶ 51.)  "CourtAlert was ultimately forced to change its proposed deal with" Potential Client 1 "in order to prevent ALN from taking advantage of Loeb's exploitation of CourtAlert's confidential pricing information."  (*Id.*)  In September 2020, a former client of CourtAlert's switched to ALN.  (*Id.* ¶ 52.)  During his employment with CourtAlert, Loeb developed a relationship with this client, and CourtAlert believes Loeb utilized his "knowledge of CourtAlert's confidential pricing information" to get this client to switch to ALN.  (*Id.*)

### B.   *Allegations from Loeb's Counterclaims and Third-Party Complaint*[3]

Loeb's employment with CourtAlert was governed by the Employment Agreement, under which he was to be paid a base salary of $70,000 plus commissions in various amounts based on "any new business Loeb obtained from qualified existing and new clients."  (TPC ¶ 3.) While employed at CourtAlert, Loeb reported to Third-Party Defendant Yaniv Schiller ("Schiller"), CourtAlert's Chief Operating Officer.  (TPC ¶ 5.)  Loeb used his CourtAlert-issued laptop to access his own personal email account.  (*Id.* ¶¶ 6–7.)  After Loeb resigned from

---

[3] The following facts are taken from the Counterclaims, (Doc. 12), and the Third-Party Complaint, (Doc. 13), filed by Loeb.  I assume the factual allegations set forth in Loeb's pleadings to be true solely for the purposes of the motion to dismiss them.  *See supra* note 1.

CourtAlert in May of 2020, he returned the laptop, and, "[u]pon information and belief, . . . CourtAlert's agents, including . . . Schiller, used" saved login information on the laptop to access Loeb's personal Yahoo account, through which Loeb maintained a personal email account, and downloaded Loeb's "confidential personal and professional information" without Loeb's authorization and for CourtAlert's benefit.  (*Id.* ¶¶ 9–12.)  Additionally, Loeb asserts that CourtAlert wrongfully withheld commissions owed to him under the Employment Agreement governing his employment with them, (Counterclaims ¶¶ 25–36), and that, as a result of "CourtAlert's failure to pay Loeb commissions owed to him, Schiller has been enriched at Loeb's expense," (TPC ¶ 28).

## II.   **Procedural History**

CourtAlert commenced this action on September 18, 2020.  (Doc. 1.)  On November 25, 2020, Loeb filed his Counterclaims against CourtAlert, (Doc. 12), as well as his Third-Party Complaint against Schiller, (Doc. 13).  On November 30, 2020, Defendants filed a motion to dismiss the Complaint or, alternatively, to grant summary judgment.  (Doc. 16.)  On December 9, 2020, CourtAlert filed a brief opposing the motion to dismiss.  (Doc. 24.)  On December 16, 2020, Defendants filed a reply brief in further support of their motion to dismiss.  (Doc. 26.)

On January 8, 2021, CourtAlert and Schiller filed a motion to dismiss both Loeb's Counterclaims and Third-Party Complaint.  (Doc. 28.)  Loeb filed a brief in opposition on January 29, 2021, (Doc. 30), and CourtAlert and Schiller filed a reply brief on their motion on February 16, 2021, (Doc. 31.)

## III.   **Legal Standard**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id*.  "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237.  "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotations and citation omitted). A court "may also consider matters of which judicial notice may be taken" in ruling on a motion to dismiss. *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).  A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

Similarly, "[a] court evaluates a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6) using the same standard as a motion to dismiss a complaint." *Phoenix Companies, Inc. v. Concentrix Ins. Admin. Sols. Corp.*, 554 F. Supp. 3d 568, 585 (S.D.N.Y.

7

2021) (citing *A.V.E.L.A., Inc.* v. *Est. of Marilyn Monroe, LLC*, 131 F. Supp. 3d 196, 203

(S.D.N.Y. 2015)).

## IV.   Discussion

I address the motion to dismiss CourtAlert's Complaint, and then analyze the motion to

dismiss Loeb's Counterclaims and Third-Party Complaint.

### A.   *The Motion to Dismiss CourtAlert's Complaint*

As an initial matter, Defendants' alternative request to convert their Rule 12(b)(6) motion

into one for summary judgment is denied.  "If, on a motion under Rule 12(b)(6) or 12(c), matters

outside the pleadings are presented to and not excluded by the court, the motion must be treated

as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  "A court properly converts

a motion to dismiss into a motion for summary judgment when 'a motion to dismiss relies on

matters outside the pleadings.'"  *Carter v. Ponte*, 17-CV-1830 (VSB), 2018 WL 4680995, at *3

(S.D.N.Y. Sept. 28, 2018) (quoting *Muhammad v. Schriro*, No. 13–cv–1962 (PKC), 2014 WL

4652564, at *3 (S.D.N.Y. Sept. 18, 2014).  "It is within" my "discretion" to determine whether to

convert a motion to dismiss into one for summary judgment.  *Aetna Cas. & Sur. Co. v. Aniero

Concrete Co.*, 404 F.3d 566, 573 (2d Cir. 2005) (per curiam).

Here, I decline to exercise that discretion, and therefore will not consider Loeb's

declaration in connection with assessing CourtAlert's allegations in its Complaint.  (*See* Doc. 18

("Loeb Decl.")).  In particular, Loeb's declaration serves to contradict, in general terms,

allegations from CourtAlert's Complaint.  (*See id.* ¶ 26 ("I did not bring any information to ALN

that it did not already possess or could not ascertain through publicly-available sources.").)  As

will be seen *infra*, whether certain information could be easily ascertained is a critical part of the

trade secrets issues in this case.  As such, I do not feel it appropriate to resolve issues in the case

based solely on Loeb's declaration.

1.      **Misappropriation of Trade Secrets and Defend Trade Secrets Act Claims (First and Second Causes of Action)**

To plead misappropriation of a trade secret under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1831–1839, a plaintiff must show:

> "an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty."

*In re Document Techs. Litig.*, 275 F. Supp. 3d 454, 462 (S.D.N.Y. 2017) (quoting 18 U.S.C. § 1839(3) (A)–(B)).  Similarly, under New York law, "a party must demonstrate:  (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means."  *Id*. at 461–62 (citing *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43–44 (2d Cir. 1999)).  Accordingly, "[u]nlike the DTSA," a "common law misappropriation" claim requires a plaintiff to plead that the defendant "actually used or disseminated the information, not just improperly acquired it."  *Lodging Sols., LLC v. Miller*, 19-cv-10806 (AJN), 2020 WL 6875255, at *3 (S.D.N.Y. Nov. 23, 2020) (collecting cases).

A "trade secret" includes "all forms and types" of information that "derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information," and that the owner of which took "reasonable measures" to keep secret.  18 U.S.C. § 1839(3).  New York law follows the six-factor test articulated in the First Restatement of Torts to determine whether information constitutes a trade secret under either the DTSA or state law, assessing

(1) the extent to which the information is known outside of the business; (2) the

9

> extent to which it is known by employees and others involved in the business; (3)
> the extent of measures taken by the business to guard the secrecy of the information;
> (4) the value of the information to the business and its competitors; (5) the amount
> of effort or money expended by the business in developing the information; (6) the
> ease or difficulty with which the information could be properly acquired or
> duplicated by others.

*Ashland Management Inc. v. Janien*, 82 N.Y. 2d 395, 407 (1993) (quoting Restatement of Torts

§ 757 cmt. B (internal quotation marks omitted)).

"A customer list developed by a business through substantial effort and kept in

confidence may be treated as a trade secret and protected at the owner's instance against

disclosure to a competitor, provided the information it contains is not otherwise readily

ascertainable." *N. Atl. Instruments*, 188 F.3d at 44 (citation omitted). "[A] customer list" will be

covered by "trade secret protections" where "it reflect[s] individual customer preferences." *Id.* at

46 (collecting cases).

Here, CourtAlert alleges that Loeb accessed its CRM system—which it keeps

confidential—and thereby was able to take information including CourtAlert's "interaction[s]"

and "emails" with its clients. (Compl. ¶ 39(a) n.1.) At this stage of the litigation, it is reasonable

to infer that CourtAlert's interactions with its customers would reflect those customers'

preferences, *see Kassner*, 496 F.3d at 237, and that such interactions are not readily ascertainable

or available. Moreover, CourtAlert alleges various instances in which Loeb attempted to

solicit—and in at least one case, was successful in soliciting—CourtAlert customers away to

ALN by making use of some of the confidential information he obtained. (*See* Compl. ¶¶ 49–

52.) Thus, CourtAlert has alleged that Loeb wrongfully accessed and allowed the other

Defendants to access confidential information reflecting "customer preferences," which is

enough to make out both the DTSA claim and the misappropriation of trade secrets claim. *See*

*N. Atl. Instruments*, 188 F.3d at 46; *Data Device Corp. v. W.G. Holt, Inc.*, No. 19-CV-

4105(JS)(ARL), 2020 WL 7024312, at *4 (E.D.N.Y. Nov. 30, 2020) (finding DTSA claim sufficiently pleaded where plaintiff "alleges that [d]efendants used a host of confidential data, including customer configuration and operational preferences and requirements, pricing and margin information, sales activity, and customer identities to bring a new product to market and sell it at competitive costs.").

Defendants argue that CourtAlert's confidential information cannot "as a matter of law[] constitute a trade secret," (MTD 13)[4], but they fail to account for the customer preferences embodied in the confidential information Loeb is alleged to have taken.  Indeed, Defendants' only real argument regarding customer preferences comes in their reply brief, where they argue in conclusory fashion that a case dealing with customer "coffee blend preferences (which are subjective and not publicly available) are obviously quite different from the allegedly confidential information at issue here."  (MTD Reply 4.)[5]  They do not explain why CourtAlert's pleadings are meaningfully different, much less why differences in preferences are "obvious" such that CourtAlert's allegations are insufficient at this stage of the case.

### 2. Breach of Contract and Tortious Interference with Contract (Third and Fourth Causes of Action)

"To state a claim for breach of contract under New York law, Plaintiff must plead plausible facts regarding:  (1) the existence of a contract; (2) performance of the plaintiff's obligations; (3) breach by the defendant; and (4) damages to the plaintiff caused by the breach." *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 515 (S.D.N.Y. 2015) (citing *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011)).  "Under New York

---

[4] "MTD" refers to Defendants' Memorandum of Law in Support of their Motion to Dismiss.  (Doc. 17.)

[5] "MTD Reply" refers to Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss the Complaint for Failure to State a Claim or, Alternatively, for Summary Judgment.  (Doc. 26.)

law, the elements of a tortious interference with contract claim are '(1) that a valid contract

exists, (2) that a third party had knowledge of that contract, (3) that the third party intentionally

and improperly procured the breach of the contract, and (4) that the breach resulted in damage to

the plaintiff.'" *Linkco, Inc. v. Fujitsu, Ltd.*, 230 F. Supp. 2d 492, 495 (S.D.N.Y. 2002) (quoting

*Albert v. Loksen*, 239 F.3d 256, 274 (2d Cir. 2001)).

     CourtAlert alleges that Loeb breached the Employment Agreement, and that the other

Defendants intentionally interfered with this contract by causing Loeb to breach it, specifically

by having him breach the Confidentiality Provision and the Non-Solicitation Provision.  (Compl.

¶¶ 77–78, 85.)  Defendants' only argument with regard to whether Loeb breached the

Confidentiality Provision—and whether Bustan and ALN tortiously interfered with this part of

the contract—is that "the information Plaintiff alleges Loeb misappropriated . . . is not remotely

a trade secret," and thus that "Loeb did not breach" the Confidentiality Provision, (MTD 15, 20–

21 (arguing that no breach of the Confidentiality Provision would mean that there could be no

tortious interference)).  I have already found that CourtAlert sufficiently alleged that Loeb

appropriated trade secrets, *supra*, so I find that CourtAlert has stated a claim of breach of

contract and tortious interference with the Employment Agreement's Confidentiality Provision.

Moreover, to the extent the Confidentiality Provision applies to information that cannot be

proven to be trade secrets over the course of this case, CourtAlert may still have an independent

claim arising out of the allegation that Loeb breached the Confidentiality Provision by taking

information he was contractually obligated to keep in confidence and out of the hands of

CourtAlert's competitor.

     With regard to the Non-Solicitation Provision, Defendants argue that it is unenforceable

as a matter of New York public policy because, as a "restrictive covenant," it cannot be enforced

to the extent it is not "reasonable" in its scope.  (MTD 16.)  Restrictive covenants like the clause

in question "warrant judicial scrutiny beyond general contract principles."  *MasterCard Int'l Inc.*

*v. Nike, Inc.*, 164 F. Supp. 3d 592, 601 (S.D.N.Y. 2016) (alteration marks omitted).  Such

covenants restrict competition and therefore "must be reasonable" to be enforceable. *Chevron*

*U.S.A., Inc. v. Roxen Service, Inc.*, 813 F.2d 26, 28 (2d Cir. 1987).  "[T]he formulation of

reasonableness may vary with the context and type of restriction imposed."  *Reed, Roberts*

*Associates, Inc. v. Strauman*, 40 N.Y.2d 303, 307 (1976).  "Under New York law, determination

of the enforceability of a restrictive covenant focuses on the particular facts and circumstances

giving context to the agreement."  *MasterCard*, 164 F. Supp. 3d at 601.  Because of this, "courts

may refrain from ruling" on such covenants "until after trial."  *See Barbagallo v. Marcum LLP*,

820 F. Supp. 2d 429, 449–50 (E.D.N.Y. 2011) (citation omitted).

Here, I will not find at this stage that, as a matter of law, the Non-Solicitation Provision is

unenforceable.  Defendants have not identified any controlling or persuasive authority finding

that a clause like the Non-Solicitation Provision is unenforceable as a matter of law.  Rather,

because "reasonableness may vary with . . . context," *Reed, Roberts*, 40 N.Y.2d at 307, whether

the Non-Solicitation Provision is enforceable will be a question of fact to be resolved later and

with reference to what is reasonable given the nature of Loeb's employment and CourtAlert's

business.

### 3.      Breach of Fiduciary Duty (Fifth Cause of Action)

"New York law with respect to disloyal or faithless performance of employment duties is

grounded in the law of agency. . . ." *Phansalkar v. Andersen Weinroth & Co., L.P.,* 344 F.3d

184, 200 (2d Cir. 2003).  Under New York law, an employee owes a duty of loyalty to his

employer and is "prohibited from acting in any manner inconsistent with his agency or trust and

is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties." *Id.* (quoting *Lamdin v. Broadway Surface Adver. Corp.*, 272 N.Y. 133, 138 (1936)). The employee's duty of loyalty is inherent to the contract governing the employee's relationship with the employer. *Id.*; *see also W. Elec. Co. v. Brenner*, 41 N.Y.2d 291, 295 (1977) ("The employer-employee relationship is one of contract, express or implied, and, in considering the obligations of one to the other, the relevant law is that of master-servant and principal-agent." (citations omitted)). But New York law limits claims over an employee's breach of the fiduciary duty of loyalty to situations "where the employee, acting as the agent of the employer, diverts business opportunities to himself or others to the financial detriment of the employer, or accepts improper kickbacks." *Delville v. Firmenich Inc.*, 920 F. Supp. 2d 446, 469 (S.D.N.Y. 2013) (quoting *Farricker v. Penson Dev., Inc.*, No. 07 Civ. 11191(DAB), 2010 WL 845983, at *10 (S.D.N.Y. Mar. 4, 2010)).

CourtAlert alleges that Loeb provided ALN with CourtAlert's confidential information during approximately the last two weeks of his employment with CourtAlert. (Compl. ¶ 39.) At this stage, this allegation is enough to proceed on the breach of fiduciary duty claim. *Delville*, 920 F. Supp. 2d at 469. Defendants offer two arguments for why the breach of fiduciary duty claim against Loeb should be dismissed, but both are misplaced. First, they argue that Loeb owed CourtAlert no fiduciary duty separate from his duties under the Employment Agreement, (MTD 21–22), but New York law creates a fiduciary duty of loyalty between an employer and employee that derives from the contractual relationship between them, *Brenner*, 41 N.Y.2d at 295. Second, they argue that Loeb could not have breached any fiduciary duty since the information allegedly misappropriated "is readily ascertainable and therefore not protectable," (MTD 22); however, such a finding is inconsistent with my holding above.

14

4.      **Unfair Competition and Unjust Enrichment (Sixth and Seventh Causes of Action)**

Under New York law, the tort of unfair competition is a "broad and flexible doctrine" that has been described as "encompassing any form of commercial immorality, or simply as endeavoring to reap where one has not sown; it is taking the skill, expenditures and labors of a competitor, and misappropriating for the commercial advantage of one person a benefit or property right belonging to another." *Roy Export Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982) (internal quotation marks omitted). The essence of the tort "is that the defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship." *Telecom Int'l Am., Ltd. v. A T & T Corp.*, 280 F.3d 175, 197 (2d Cir. 2001) (internal quotation marks omitted). Bad faith is an essential element of an unfair competition claim. *See Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34–35 (2d Cir. 1995); *Metito (Overseas) Ltd. v. Gen. Elec. Co.*, No. 05 Civ. 9478(GEL), 2009 WL 399221, at *13 (S.D.N.Y. Feb. 18, 2009).

"'Where a plaintiff's unfair competition claim is based entirely on the same alleged conduct proscribed by contract, and plaintiff has pled a breach of contract claim, the unfair competition claim' must be 'dismissed as duplicative of the breach claim.'" *Apotex Corp. v. Hospira Healthcare India Priv. Ltd.*, 18-CV-4903 (JMF), 2019 WL 3066328, at *6 (S.D.N.Y. July 12, 2019) (quoting *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 508 (S.D.N.Y. 2018)). However, "if the defendant goes beyond a mere breach of contract and acts in such a way that a trier of fact could infer that it willfully intended to harm the plaintiff," "that defendant may also breach an independent duty in tort." *Bytemark*, 342 F. Supp. 3d at 509 (quoting *Carvel Corp. v. Noonan*, 350 F.3d 6, 16–17 (2d Cir. 2003)). Additionally, "[a]lthough unfair

competition often alleges misappropriation of trade secrets or ideas, a claim may be based on misappropriation of client lists, internal company documents, and business strategies" that do not qualify as protected trade secrets "if wrongful or fraudulent tactics are employed." *Friedman v. Wahrsager,* 848 F. Supp.2d 278, 303 (E.D.N.Y. 2012) (citing *Barbagallo,* 820 F. Supp. 2d at 429); *see also ITC Ltd. v. Punchgini, Inc.,* 9 N.Y.3d 467, 476–77 (2007) (explaining that New York law has "long recognized" a "misappropriation" theory underlying an unfair competition claim, under "[t]he principle that one may not misappropriate the results of the skill, expenditures and labors of a competitor.").

"[U]njust enrichment under New York law 'is an equitable claim that is unavailable where an adequate remedy at law exists.'" *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 433 (S.D.N.Y. 2017) (quoting *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 F. App'x 611, 613 (2d Cir. 2010)).

Here, CourtAlert asserts its unfair competition claim against ALN on the basis that "ALN induced" Loeb to steal confidential information "in violation of the employees' contractual and fiduciary obligations to CourtAlert." (Compl. ¶ 98.)  ALN "compet[es]" against CourtAlert, (*id.* ¶ 22), and the pleadings support the requirement of bad faith, *Jeffrey Milstein*, 58 F.3d at 34–35. CourtAlert alleges that ALN had Loeb use his final days at CourtAlert to "secretly send to ALN" "CourtAlert's confidential information." (Compl. ¶ 39.)  In other words, bad faith can be plausibly inferred based on Loeb's alleged actions.  Thus, to the extent that this "confidential information" cannot be proven to be protectable trade secrets over the course of this litigation, CourtAlert's unfair competition claim is sufficiently pled and provides a non-duplicative theory of recovery.

In light of this, the unjust enrichment claim is duplicative, as it is asserted against ALN

for the same conduct underlying the unfair competition claim, as well as for the conduct underlying CourtAlert's other surviving claims.  (*See id.* ¶ 101–104.)  CourtAlert thus has adequate remedies at law and cannot proceed on the "equitable claim" of unjust enrichment. *Gen. Motors LLC*, 257 F. Supp. 3d 372 at 433.

      **B.**  ***The Motion to Dismiss Loeb's Counterclaims and Third-Party Complaint***

Through his pleadings, Loeb asserts claims against CourtAlert and Schiller under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701–2713; under New York law for unjust enrichment, and, as only against CourtAlert, for failure to pay earned commissions under the New York Labor Law and for breach of contract.

      **1.**      **Computer Fraud and Abuse Act**

Although "principally a criminal statute," the CFAA "provides a private right of action to '[a]ny person who suffers damage or loss by reason of a violation of'" its provisions.  *Deutsch v. Hum. Res. Mgmt., Inc.*, 19-CV-5305 (VEC), 2020 WL 1877671, at *2 (S.D.N.Y. Apr. 15, 2020) (quoting 18 U.S.C. § 1030(g)).  However, "the scope of civil actions permitted under" the CFAA "has always been limited."  *Hancock v. County of Rensselaer*, 882 F.3d 58, 63 (2d Cir. 2018).  One can only state a civil CFAA claim if "the conduct involves" one of the "factors set forth in subclasses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)" of § 1030(g).  *Id.* (quoting 18 U.S.C. § 1030(g)).  Of these, only subclass (I) is relevant here.  It covers "loss to 1 or more persons during any 1-year period . . .  aggregating at least $5,000 in value."  18 U.S.C. § 1030(c)(4)(A)(i)(I).  Because of this, and because CFAA civil actions limit "[d]amages for a violation involving only conduct described in" subclass (I) to "economic damages," 18 U.S.C. § 1030(g), courts in this circuit have generally limited CFAA civil actions to situations where a plaintiff alleges "that losses were incurred from efforts to identify, diagnose, or address damage

17

to the protected device or from an interruption of service," *see Deutsch*, 2020 WL 1877671, at *5 (collecting cases).  In other words, work done to uncover, investigate and mitigate the underlying violation.

Loeb's only argument that he satisfies CFAA's damages requirement is that he "incurred damages associated with 'investigating and responding to the unauthorized access' exceeding the CFAA's $5,000 statutory threshold."  (Counterclaim MTD Opp 7.)  However, this mere "formulaic recitation of the [requirements] of [the] cause of action," is not sufficient to render Loeb's claim plausible.  *See Iqbal*, 556 U.S. at 678.  Loeb's pleadings offer no well-pleaded facts as to what damages he incurred or how.  Loeb has thus failed to plead facts sufficient to proceed on a CFAA claim.  *Cf., e.g.*, *Maddox Enterprises LLC v. Milad Oskouie, Osko M Ltd.*, 17-CV-1889 (RA), 2021 WL 3675072, at *12 (S.D.N.Y. Aug. 18, 2021) (refusing to credit the "threadbare recital" of the damages element of a CFAA action (alteration marks omitted)); *Seltzer v. Clark Assocs. LLC*, 20 Civ. 4685 (AKH), 2021 WL 396633, at *2 (S.D.N.Y. Feb. 4, 2021); *Combier v. Portelos*, No. 17-CV-2239 (MKB), 2018 WL 3302182, at *10 (E.D.N.Y. July 5, 2018) ("Nor has plaintiff explained how the alleged deletion of content from her website created an interruption in service that caused economic damages of at least $5,000") (collecting cases), *report and recommendation adopted*, 17-CV-2239 (MKB) (RLM), 2018 WL 4678577 (E.D.N.Y. Sept. 29, 2018), *aff'd*, 788 F. App'x 774 (2d Cir. 2019).

### 2.    Stored Communications Act Claim

"The SCA creates liability for anyone who 'intentionally accesses without authorization a facility through which an electronic communication service is provided . . . and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such."  *Cohen v. Casper Sleep Inc.*, 17cv9325, 2018 WL 3392877, at *5

(S.D.N.Y. July 12, 2018) (quoting 18 U.S.C. § 2701(a)).  "The term 'facility' is not defined by

the statute, but courts have concluded that 'facilities' under the SCA are network service

providers, which includes telephone companies, internet or e-mail service providers, and bulletin

board services."  *Kornotzki v. Jawad*, 19-CV-6689 (JMF), 2020 WL 2539073, at *3 (S.D.N.Y.

May 19, 2020) (some internal quotation marks omitted) (quoting *Walker v. Coffey*, 956 F.3d 163,

168 (3d Cir. 2020)).  By contrast, once files are "downloaded onto" a device, "they [a]re not 'in

electronic storage' within the meaning of the" SCA, *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d

216, 232 (2d Cir. 2020) (citing *Cohen*, 2018 WL 3392877, at *5–6), because the relevant

"section [of the SCA] is specifically targeted at communications temporarily stored by electronic

communications services incident to their transmission—for example, when an email service

stores a message until the addressee downloads it," *In re DoubleClick Inc. Priv. Litig.*, 154 F.

Supp. 2d 497, 512 (S.D.N.Y. 2001).

　　　　Here, Loeb alleges that CourtAlert and Schiller used the login credentials saved on

Loeb's former work-issued laptop to access "Loeb's Yahoo Account," a personal account of his,

and thereby "downloaded Loeb's confidential personal and professional information from his

Yahoo Account without his knowledge or authorization."  (TPC ¶¶ 10–11; Counterclaims ¶¶ 9–

10.)  Loeb has thus alleged that CourtAlert and Schiller violated the SCA.  *See Cohen*, 2018 WL

3392877, at *5.  The contrary argument that "Loeb does not . . . allege that the materials . . . were

not stored locally on the laptop" already, (Counterclaim MTD 7),[6] is born from a misreading of

Loeb's pleadings.

　　　　Loeb's SCA claim are made "on information and belief."  (*See* TPC ¶¶ 10–11;

---

[6] "Counterclaim MTD" refers to CourtAlert's and Schiller's Memorandum of Law in Support of Their Motion to Dismiss Counterclaims and Third-Party Complaint.  (Doc. 29.)

Counterclaims ¶¶ 9–10.)  However, a plaintiff may "plead[] facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (some internal quotation marks and citations omitted).  In *Arista*, the Second Circuit explained Supreme Court precedent by noting that "[b]ecause the *Twombly* complaint's factual allegations described only actions that were parallel, and were doctrinally consistent with lawful conduct, the conclusory allegation on information and belief that the observed conduct was the product of an unlawful agreement was insufficient to make the claim plausible." *Id.* (citation omitted).  Here, CourtAlert's own pleadings in conjunction with Loeb's render the SCA claim plausible, because CourtAlert pleads that it found all manner of information through emails it accessed through Loeb's former work-issued laptop, including an "email from Bustan" to "Loeb," (*see* Compl. ¶¶ 33–34, 36, 38), and Loeb pleads, in essence, that CourtAlert and Schiller must have accessed his personal Yahoo account to retrieve this information, (*see* TPC ¶¶ 10–11; Counterclaims ¶¶ 9–10).  Therefore, these allegations render it plausible that CourtAlert's "forensic analysis" of Loeb's work-issued laptop, (Compl. ¶ 40), extended to accessing Loeb's personal emails stored on a Yahoo server.

### 3.    Loeb's Claims Based on Unpaid Commission:  Breach of Contract, Unjust Enrichment, and New York Labor Law

Loeb's remaining claims are for breach of contract, unjust enrichment, and violations of New York Labor Law § 191-c, and are all based on allegations that CourtAlert did not pay Loeb commissions owed to him "in the amount of approximately $84,400."  (Counterclaims ¶¶ 28, 31; *see also id.* ¶ 36 ("Loeb is entitled to restitution from CourtAlert due to CourtAlert's unjust retention of the commissions owed to Loeb.").)  Loeb's only claim regarding his commissions brought against Schiller is for unjust enrichment.  (TPC ¶¶ 27–30.)

The unjust enrichment claim against Schiller fails, because such a claim must be supported by allegations that a defendant "was enriched . . . at t[he]" plaintiff's "expense." *Ameriway Corp. v. Chen*, 19-CV-9407 (VSB), 2021 WL 6113373, at *5 (S.D.N.Y. Dec. 27, 2021) (quoting *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011)).  Loeb pleads nothing suggesting any benefit to Schiller from CourtAlert's retaining unpaid commissions.  His brief opposing the motion to dismiss his Counterclaims and Third-Party Complaint does not support his unjust enrichment claim.  Loeb only says that "Schiller . . . was personally involved in and personally benefited from the decision not to pay Loeb the commissions owed to him by CourtAlert."  (Counterclaim MTD Opp. 11.)[7]  He does not explain this conclusory statement, and he does not point to any allegations in his pleadings that support this statement.  Therefore, Loeb's unjust enrichment claim against Schiller must be dismissed.

However, Loeb's unjust enrichment claim may proceed against CourtAlert.  Although CourtAlert argues the claim is duplicative, under New York law "[a] plaintiff can plead unjust enrichment as an alternative claim to breach of contract" as long as there is a "bona fide dispute concerning existence of a contract or whether the contract covers the dispute in issue."  *See Trahan v. Lazar*, 457 F. Supp. 3d 323, 360 (S.D.N.Y. 2020) (citation omitted); *Trovato v. Galaxy Sanitation Servs. of N.Y., Inc.*, 171 A.D.3d 832, 834 (2d Dep't 2019) ("plaintiff may allege a cause of action to recover damages for unjust enrichment as an alternative to a cause of action alleging breach of contract" where "defendants apparently dispute the existence of" a controlling contract).  Here, CourtAlert has yet to indicate whether it will or will not challenge the extent to which the Employment Agreement requires it to pay the commissions Loeb seeks.  If it does

---

[7] "Counterclaim MTD Opp." refers to Defendant/Third-Party Plaintiff Robert Loeb's Opposition to CourtAlert's and Schiller's Motion to Dismiss Counterclaims and Third-Party Complaint.  (Doc. 30.)

"dispute" whether the "contract covers" the commissions, then Loeb would be entitled to pursue an unjust enrichment claim in the alternative.  *See Trahan*, 457 F. Supp. 3d at 360.  Therefore, I decline to dismiss the unjust enrichment claim against CourtAlert at this time.

Finally, Loeb's New York Labor Law § 191-c claim will be dismissed without prejudice, and he is granted leave to amend Count Four of his Counterclaims to allege a claim under New York Labor Law § 191(1)(c).  Here, in response to the argument that Loeb's asserted claim under Section 191-c cannot stand because Section 191-c only applies to the payment of commissions to "independent contractors," and not commissions paid to employees like Loeb, (*see* Counterclaim MTD 11 (quoting *Derven v. PH Consulting, Inc.*, 427 F. Supp. 2d 360, 369 (S.D.N.Y. 2006)), Loeb essentially concedes that he erred in labeling his claim as one under Section 191-c, and that he should have asserted a claim under New York Labor Law Section 191(1)(c), (*see* Counterclaim MTD Opp. 11 & n.3).  *See Derven*, 427 F. Supp. 2d at 369 ("salaried employees who receive commissions are protected under § 191(1)(c), while independent contractors are covered by §§ 191–a through 191–c.").  Loeb's request to amend Count Four of his Counterclaims is thus GRANTED.

## V.   <u>Conclusion</u>

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.  Specifically, Defendants' motion to dismiss CourtAlert's unjust enrichment claim is GRANTED.  CourtAlert's and Schiller's motion to dismiss Loeb's Counterclaims and Third-Party Complaint is GRANTED IN PART and DENIED IN PART.  Specifically, the motion to dismiss Loeb's CFAA claim and unjust enrichment claim against Schiller is GRANTED.  The motion to dismiss Loeb's New York Labor Law claim is also GRANTED.  However, Loeb may amend Count Four of his Counterclaims.

SO ORDERED.

Dated:  September 29, 2023
        New York, New York

Vernon S. Broderick
United States District Judge